AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Arik Preis
Meredith A. Lahaie

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| AMERICAN MEDIA, INC., *et al.*,[1] | ) Case No. 10-16140 (MG) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**<u>PLAN FINANCING SUPPLEMENT TO THE DEBTORS' JOINT PREPACKAGED
PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Media, Inc. (3383); American Media Operations, Inc. (4424); American Media Consumer Entertainment, Inc. (3852); American Media Consumer Magazine Group, Inc. (3863); American Media Distribution & Marketing Group, Inc. (3860); American Media Mini Mags, Inc. (3854); American Media Newspaper Group, Inc. (3864); American Media Property Group, Inc. (4153); Country Music Media Group, Inc. (2019); Distribution Services, Inc. (1185); Globe Communications Corp. (2593); Globe Editorial, Inc. (3859); Mira! Editorial, Inc. (3841); National Enquirer, Inc. (4097); National Examiner, Inc. (3855); Star Editorial, Inc. (9233); and Weider Publications, LLC (1848).

This is the Plan Financing Supplement of the above-captioned debtors and debtors in possession (each, a "**Debtor**" and, collectively, the "**Debtors**") filed as part of the *Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated October 30, 2010 [Docket No. 20] (as amended, supplemented or modified from time to time, the "**Plan**"). The hearing to consider confirmation of the Plan is scheduled for December 20, 2010 at 10:00 a.m. (EST).

The Plan Financing Supplement is also available on the website of Kurtzman Carson Consultants, LLC at www.kccllc.net/AMI and/or may be obtained upon written request from American Media, c/o Kurtzman Carson Consultants, LLC, 599 Lexington Avenue, 39th Floor, New York, New York, 10022.

| | |
|---|---|
| New York, New York<br>Dated: November 24, 2010 | */s/ Ira S. Dizengoff*<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>One Bryant Park<br>New York, New York 10036<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br><br>Ira S. Dizengoff<br>Arik Preis<br>Meredith A. Lahaie<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |

2

**PLAN FINANCING SUPPLEMENT DOCUMENTS**

Exhibit A     Indicative Terms of the New First Lien Notes

Exhibit B     Indicative Terms of the New Second Lien Notes

## **EXHIBIT A**

## Summary of Terms of First Lien Senior Secured Notes due 2017

| | |
|---|---|
| **Issuer** | AMO Escrow Corporation (the "Escrow Issuer"), an indirect, wholly-owned subsidiary of American Media Operations, Inc. (including as reorganized, "AMO"), to be merged with and into AMO. |
| **Title of securities** | 11½% first lien senior secured notes due 2017. |
| **Aggregate principal amount** | $385,000,000 |
| **Issue price** | 100% |
| **Maturity** | December 15, 2017 |
| **Interest payment dates** | June 15 and December 15 of each year, commencing on June 15, 2011. Interest will accrue from December 1, 2010. |
| **Optional redemption** | Prior to December 15, 2013, AMO may redeem the first lien notes, in whole or in part, at a price equal to 100% of the principal amount thereof, plus accrued and unpaid interest, if any, plus a "T+50" make-whole premium. |

AMO may also redeem any of the first lien notes at any time on or after December 15, 2013, in whole or in part, at the redemption prices (expressed as percentages of the principal amount) set forth below, plus accrued and unpaid interest, if any, to the date of redemption, if redeemed during the 12 month period commencing on December 15 of the years set forth below:

| Date | Price |
|---|---|
| 2013 | 108.625% |
| 2014 | 105.750% |
| 2015 | 102.875% |
| 2016 and thereafter | 100.000% |

In addition, prior to December 15, 2013, AMO may redeem up to 35% of the aggregate principal amount of the first lien notes with the net proceeds of certain equity offerings at a price equal to 111.500% of the principal amount thereof, provided that at least 65% of the aggregate principal amount of the first lien notes remains outstanding immediately after such redemption.

AMO may also redeem up to 10% of the aggregate principal amount of the first lien notes in any twelve-month period at any time and from time to time prior to December 15, 2013, at a price equal to 103% of the principal amount of the notes redeemed.

**Escrow of proceeds; Special mandatory redemption** ............ The Escrow Issuer will deposit the cash proceeds it receives from the notes offering (the "Escrow Issuer Proceeds") and

AMO will deposit additional amounts which, together with the Escrow Issuer Proceeds, would be sufficient to redeem the notes at the issue price in connection with a special mandatory redemption, into an escrow account until the date that the escrow release conditions are satisfied or a special mandatory redemption is required.

Escrow funds will be released to effect a special mandatory redemption if (i) the Bankruptcy Court does not approve the prepackaged plan of reorganization of AMO and certain of its subsidiaries (the "Plan") within 60 days of the issue date, subject to extension for an additional 35 days on no more than one occasion, if certain conditions are satisfied or (ii) prior to the date specified in clause (i) if the Escrow Issuer has determined, in its reasonable discretion, that the following escrow release conditions, among others, cannot be satisfied by such date:

- issuance by the Bankruptcy Court of an order that has not been stayed pending appeal confirming the Plan and, other than release of escrow proceeds and other conditions to be satisfied substantially simultaneously with release of escrow proceeds, satisfaction or waiver of all conditions precedent to effectiveness of such Plan;

- AMO's new revolving credit facility shall have been entered into and become effective; provided, that no more than $10 million shall be borrowed thereunder on the escrow release date;

- AMO and its subsidiaries shall have no debt for borrowed money other than (a) the first lien notes offered pursuant to the notes offering, (b) up to $140 million principal amount of second lien senior secured notes (or any new unsecured pay-in-kind notes that are scheduled to mature after the maturity date of the first lien notes and that are issued in lieu of second lien notes pursuant to the Plan), (c) up to $10 million of borrowings under the new revolving credit facility and (d) up to $2 million of general debt for borrowed money; and

- AMO delivering to the escrow agent a certificate showing in reasonable detail that, as of the escrow release date, AMO's pro forma ratio of Debt Covenant EBITDA (as defined in the offering memorandum for the notes offering) for the four fiscal quarters most recently then ended for which financial statements have been delivered to first lien indebtedness (exclusive of certain revolver borrowings) is less than or equal to 3.5 to 1.0.

The special mandatory redemption price for the first lien notes is equal to 100% of the issue price of such notes plus accrued

2

|  |  |
|---|---|
|  | and unpaid interest on such notes from the issue date up to but not including the date of the special mandatory redemption. |
| **Guarantees** .............................. | Upon AMO's emergence from bankruptcy and the release of the funds from escrow, the first lien notes will be guaranteed on a first lien senior secured basis by each of AMO's domestic subsidiaries that guarantees obligations under the new revolving credit facility. |
| **Collateral** ................................. | Upon AMO's emergence from bankruptcy and the release of the funds from escrow, the first lien notes and the guarantees of the first lien notes will be secured by a first-priority lien on the assets that from time to time secure the obligations of AMO and the guarantors under the new revolving credit facility, subject to permitted liens and certain exceptions. With respect to the collateral, the indebtedness and obligations under the first lien notes and the new revolving credit facility will have first-priority liens. Under the terms of the First Lien Intercreditor Agreement (as defined below), however, in the event of a foreclosure on the collateral or insolvency proceedings, the holders of the first lien notes will receive proceeds from the collateral only after obligations under the new revolving credit facility have been paid in full. |
| **Ranking** ..................................... | Upon AMO's emergence from bankruptcy and the release of the funds from escrow, the first lien notes and the guarantees of the first lien notes will be AMO's and the guarantors' first lien senior secured obligations. The indebtedness evidenced by the first lien notes and the guarantees of the first lien notes will: |

- rank senior in right of payment to AMO's and the guarantors' future subordinated indebtedness;

- rank equally in right of payment to all of AMO's and the guarantors' existing and future senior indebtedness, including obligations under the new revolving credit facility and any new second lien notes;

- rank equally in lien priority with AMO's and the guarantors' obligations under the new revolving credit facility and any other pari passu lien obligations incurred after the escrow release date to the extent of the value of the collateral; <u>provided</u> that in the event of a foreclosure on the collateral or insolvency proceedings, the holders of the first lien notes and any other pari passu lien indebtedness will receive proceeds from the collateral only after obligations under the new revolving credit facility have been paid in full;

- be effectively senior to all of AMO's and the guarantors' future junior lien and unsecured indebtedness, including any new second lien notes, to the extent of value of the collateral; and

3

|  |  |
|---|---|
|  | • be structurally junior to all existing and future indebtedness and other liabilities of each of AMO's subsidiaries that is not a guarantor of the notes. |
| **Intercreditor agreements** | Upon AMO's emergence from bankruptcy and the release of the funds from escrow, the trustee and the collateral agent under the indenture governing the first lien notes and the administrative agent and collateral agent under the new revolving credit agreement will enter into an intercreditor agreement (the "First Lien Intercreditor Agreement") as to the relative priorities of their respective security interests in the assets securing the first lien notes and obligations under AMO's new revolving credit facility and certain other matters relating to the administration of security interests, exercise of remedies, certain bankruptcy-related provisions and other intercreditor matters. The First Lien Intercreditor Agreement will also provide that in the event of a foreclosure on the collateral or insolvency proceedings, the holders of first lien notes will receive proceeds from the collateral only after obligations under the new revolving credit facility have been paid in full.

Upon AMO's emergence from bankruptcy and the release of the funds from escrow, the trustee and collateral agent under the indenture governing the second lien notes, the administrative agent and collateral agent under the new revolving credit facility and the first lien collateral trustee will enter into an intercreditor agreement as to the relative priorities of their respective security interests in the assets securing the second lien notes and obligations under AMO's new revolving credit facility and certain other matters relating to the administration of security interests, exercise of remedies, amendments to second lien documentation, if any, certain bankruptcy-related provisions and other intercreditor matters. |
| **Change of control, asset sales** | Upon certain types of changes in control, AMO will be required to make an offer to purchase each holder's notes at a purchase price of 101% of the principal amount thereof, plus accrued and unpaid interest, to the date of purchase.

If AMO sells assets under certain circumstances, it will be required to make an offer to purchase the notes at 100% of their face amount, plus accrued and unpaid interest to the date of purchase. |
| **Certain covenants** | The indenture governing the first lien notes will contain covenants that will, among other things, limit the ability of AMO and its restricted subsidiaries, subject to exceptions and qualifications, to:

• incur or guarantee additional indebtedness or issue certain preferred equity;
• pay dividends and make certain distributions in respect of capital stock or make other restricted payments; |

4

- make certain investments;
- create or incur certain liens;
- sell or otherwise dispose of certain assets;
- enter into certain transactions with affiliates;
- limit the ability of AMO's restricted subsidiaries to make payments to AMO;
- merge, consolidate, sell or otherwise dispose of all or substantially all of the assets of AMO; and
- designate AMO's subsidiaries as unrestricted subsidiaries.

**Activities of the Escrow Issuer** .......................................... The indenture governing the notes will require the Escrow Issuer's activities to be restricted to issuing the notes and any second lien notes, performing its obligations with respect to the notes under the applicable indentures and the escrow agreement for the notes and, if applicable, the second lien notes and consummating the merger of the Escrow Issuer with and into AMO or redeeming the first lien notes pursuant to a special mandatory redemption, as applicable. The Escrow Issuer may not own, hold or otherwise have any interest in any assets other than the escrow account and cash or certain cash equivalents.

**Registration rights; exchange offer** .......................... Pursuant to a registration rights agreement to be executed as part of the offering, the Escrow Issuer will agree and, upon AMO's emergence from bankruptcy and the release of funds from escrow, AMO and the guarantors will agree, to use commercially reasonable efforts (a) to register with the SEC exchange notes having substantially identical terms as the first lien notes offered pursuant to the notes offering, (b) to have an exchange offer completed no later than 450 calendar days after the issue date and (c) under certain circumstances, file a shelf registration statement with respect to the notes. If AMO fails to meet the conditions set forth in the registration rights agreement, the annual interest on the notes will increase by 0.25% per annum. The annual interest rate on the notes will increase by an additional 0.25% per annum for each subsequent 90-day period up to a maximum additional interest rate of 1.00% per annum.

**Transfer restrictions** ................. The notes and the guarantees are not being registered under the Securities Act and are subject to restrictions on transfer.

**No prior market** ......................... The notes will be a new class of securities for which there is currently no established trading market. Although, the initial purchasers have advised AMO that they intend to make a market in the notes, they are not obligated to do so and may discontinue market-making activities at any time without notice. Accordingly, a liquid market for the notes may not develop or be maintained.

**Use of proceeds** ........................ Upon satisfaction of the escrow release conditions, AMO will use the net proceeds of the offering, along with cash on hand and borrowings under the new revolving credit facility, if

5

|  |  |
|---|---|
| | necessary, to finance its emergence from bankruptcy and pay related fees and expenses. |
| **Conditions to consummating the offering** .................................... | The consummation of the offering will be subject to the Bankruptcy Court issuing the Escrow Issuer Approval Order (as defined below), receipt of the required votes to approve the Plan, filing of the Chapter 11 Cases (as defined in the offering memorandum for the notes offering), receipt of corporate family ratings for AMO from Moody's Investors Services, Inc. and the satisfaction of certain other conditions, prior to the scheduled date of issuance of the notes. |
| | The "Escrow Issuer Approval Order" means one or more orders (i) approving the contribution of amounts by AMO to the Escrow Issuer in an amount such that, taken together with the proceeds to the Escrow Issuer from the notes, the Escrow Issuer has funds sufficient to satisfy the special mandatory redemption, (ii) approving the issuance of the first lien notes, and (iii) finding that the Escrow Issuer and its parent, a newly established non-debtor Delaware company that is wholly owned by AMO, are non-debtor entities and that any proceeds or assets they have or will have will not be deemed property of the debtors' estates and will not be consolidated with the debtors' assets or estates. |

## **EXHIBIT B**

## Summary of Terms of Second Lien Senior Secured Notes due 2018

American Media Operations, Inc. (including as reorganized,"AMO") expects to issue up to $140 million aggregate principal amount of second lien notes, of which at least $25 million shall be issued to term lenders under AMO's 2009 credit agreement (including affiliates of Avenue and Angelo Gordon (the "Backstop Parties")) in accordance with the prepackaged plan of reorganization of AMO and certain of its subsidiaries (the "Plan") and the balance may be issued in accordance with the Plan or in one or more private placement offerings by AMO Escrow Corporation (the "Escrow Issuer"), an indirect, wholly-owned subsidiary of AMO, prior to the effective date of the Plan.  The terms of the second lien notes are expected to be substantially consistent with the terms below.

| | |
|---|---|
| **Issuer** | AMO or the Escrow Issuer (to be merged with and into AMO). |
| **Title of securities** | Second lien senior secured notes due 2018. |
| **Aggregate principal amount** | Up to $140,000,000. |
| **Yield to maturity** | Expected not to exceed 13.5% per annum. |
| **Issue price** | To be determined. |
| **Maturity** | June 15, 2018. |
| **Interest payment dates** | June 15 and December 15, commencing on June 15, 2011. |
| **Optional redemption** | It is expected that prior to December 15, 2013, AMO will not be permitted to redeem the second lien notes except: (i) at a price equal to 100% of the principal amount thereof, plus accrued and unpaid interest, if any, plus a "T+50" make-whole premium or (ii) pursuant to an "equity clawback" of up to 35% of the aggregate principal amount of the second lien notes issued with the proceeds of certain equity offerings at a price equal to 100% of the principal amount thereof, plus a premium equal to the stated coupon of the second lien notes; provided that in the case of this clause (ii) at least 65% of the aggregate principal amount of the second lien notes remain outstanding immediately after such redemption.<br><br>It is expected that on and after December 15, 2013, the second lien notes will be redeemable at stated redemption prices to be included in the indenture governing the second lien notes, which redemption prices shall decline ratably to par in 2016 and thereafter. |
| **Escrow of proceeds; Special mandatory redemption** | If the Escrow Issuer is the issuer of the second lien notes, it is expected that the Escrow Issuer will deposit the cash proceeds it receives from the notes offering (the "Escrow Issuer Second Lien Proceeds") and additional amounts which, together with the Escrow Issuer Second Lien Proceeds, would be sufficient to redeem the notes at the issue price in connection with a special mandatory redemption, into an escrow account until the date that the escrow release conditions are satisfied or a special |

|  |  |
|---|---|
| | mandatory redemption is required. |
| **Guarantees** | Upon AMO's emergence from bankruptcy and, if applicable, the release of the funds from escrow, the second lien notes will be guaranteed on a second lien senior secured basis by each of AMO's domestic subsidiaries that will guarantee obligations under AMO's new revolving credit facility. |
| **Collateral** | Upon AMO's emergence from bankruptcy and, if applicable, the release of the funds from escrow, the second lien notes and the guarantees of the second lien notes will be secured by a second-priority lien on the assets that from time to time secure the obligations of AMO and the guarantors under the new revolving credit facility and the first lien notes, subject to permitted liens and certain exceptions. With respect to the collateral, the indebtedness and obligations under the second lien notes will have second-priority liens that will be junior in priority to the liens securing the new revolving credit facility and the first lien notes pursuant to the terms of the Second Lien Intercreditor Agreement (as defined below). |
| **Ranking** | Upon AMO's emergence from bankruptcy and, if applicable, the release of the funds from escrow, the second lien notes and the guarantees of the second lien notes will be AMO's and the guarantors' second lien senior secured obligations. The indebtedness evidenced by the second lien notes and the guarantees of the second lien notes will: |

- rank senior in right of payment to AMO's and the guarantors' future subordinated indebtedness;

- rank equally in right of payment to all of AMO's and the guarantors' existing and future senior indebtedness, including obligations under the new revolving credit facility and the first lien notes;

- rank junior in lien priority with AMO's and the guarantors' obligations under the new revolving credit facility, the first lien notes and any other pari passu lien obligations subsequently incurred to the extent of the value of the collateral;

- be effectively senior to all of AMO's and the guarantors' future unsecured indebtedness, to the extent of value of the collateral; and

- be structurally junior to all existing and future indebtedness and other liabilities of each of AMO's subsidiaries that is not a guarantor of the second lien notes.

|  |  |
|---|---|
| **Intercreditor agreement** | Upon AMO's emergence from bankruptcy and, if applicable, the release of the funds from escrow, the trustee and collateral agent under the indenture governing the second lien notes, the administrative agent and the collateral agent under the new |

2

|  |  |
|---|---|
|  | revolving credit facility and the trustee and collateral agent under the indenture governing the first lien notes will enter into an intercreditor agreement (the "Second Lien Intercreditor Agreement") as to the relative priorities of their respective security interests in the assets securing the second lien notes, the first lien notes and obligations under AMO's new revolving credit facility and certain other matters relating to the administration of security interests, exercise of remedies, amendments to second lien documentation, if any, certain bankruptcy-related provisions and other intercreditor matters. |
| **Change of control, asset sales** .......................................... | Upon certain types of changes in control, AMO will be required to make an offer to purchase each holder's second lien notes at a purchase price of 101% of the principal amount thereof, plus accrued and unpaid interest to the date of purchase.<br><br>If AMO sells assets under certain circumstances, it will be required to make an offer to purchase the second lien notes at 100% of their face amount, plus accrued and unpaid interest to the date of purchase. |
| **Certain covenants**  .................... | The indenture governing the second lien notes will contain covenants that will, among other things, limit the ability of AMO and its restricted subsidiaries, subject to exceptions and qualifications, to:<br><br>- incur or guarantee additional indebtedness or issue certain preferred equity;<br>- pay dividends and make certain distributions in respect of capital stock or make other restricted payments;<br>- make certain investments;<br>- create or incur certain liens;<br>- sell or otherwise dispose of certain assets;<br>- enter into certain transactions with affiliates;<br>- limit the ability of AMO's restricted subsidiaries to make payments to AMO;<br>- merge, consolidate, sell or otherwise dispose of all or substantially all of the assets of AMO; and<br>- designate AMO's subsidiaries as unrestricted subsidiaries. |
| **Activities of the Escrow Issuer** ........................................ | If the Escrow Issuer is the issuer of the second lien notes, the indenture governing the second lien notes will require the Escrow Issuer's activities to be restricted to issuing the second lien notes and the first lien notes, performing its obligations with respect to the notes under the applicable indentures and the applicable escrow agreements for each series of notes and consummating the merger of the Escrow Issuer with and into AMO or redeeming the first lien notes and second lien notes pursuant to a special mandatory redemption, as applicable. The Escrow Issuer may not own, hold or otherwise have any interest in any assets other than the escrow account and cash |

3

|  |  |
|---|---|
|  | or certain cash equivalents. |
| **Registration rights; exchange offer** .......................... | Pursuant to a registration rights agreement to be executed as part of the private placement offering of the second lien notes, if any, the Escrow Issuer will agree and, upon AMO's emergence from bankruptcy and the release of funds from escrow, AMO and the guarantors will agree, to use commercially reasonable efforts (a) to register with the SEC exchange notes having substantially identical terms as the second lien notes offered pursuant to the notes offering, (b) to have an exchange offer completed no later than 450 calendar days after the issue date and (c) under certain circumstances, file a shelf registration statement with respect to the notes. If AMO fails to meet the conditions set forth in the registration rights agreement, the annual interest on the second lien notes will increase by 0.25% per annum. The annual interest rate on the notes will increase by an additional 0.25% per annum for each subsequent 90-day period up to a maximum additional interest rate of 1.00% per annum.<br><br>The Backstop Agreement entered into on October 30, 2010 among AMI, AMO and the Backstop Parties also provides for the execution of a registration rights agreement, on commercially reasonable terms to be mutually agreed, to be entered into between AMO and the Backstop Parties. |
| **Transfer restrictions** ................ | The second lien notes and the guarantees are not being registered under the Securities Act and are subject to restrictions on transfer. |
| **No prior market** ........................ | The second lien notes will be a new class of securities for which there is currently no established trading market. Accordingly, a liquid market for the notes may not develop or be maintained. |
| **Use of proceeds** ........................ | AMO (upon satisfaction of the escrow release conditions, if applicable) will use the net proceeds of the offering, along with cash on hand, proceeds from the offering of first lien notes and borrowings under the new revolving credit facility, if necessary, to finance its emergence from bankruptcy and pay related fees and expenses. |
| **Conditions to consummating the offering** ..................................... | With respect to any issuance of second lien notes by the Escrow Issuer, it is expected that the consummation of such offering will be subject to the Bankruptcy Court issuing one or more orders (i) approving the contribution of amounts by AMO to the Escrow Issuer in an amount such that, taken together with the proceeds to the Escrow Issuer from the second lien notes, the Escrow Issuer has funds sufficient to satisfy the special mandatory redemption of the second lien notes, (ii) approving the issuance of the second lien notes and (iii) finding |

4

that the Escrow Issuer and its parent, a newly established non-debtor Delaware company that is wholly owned by AMO, are non-debtor entities and that any proceeds or assets they have or will have will not be deemed property of the debtors' estates and will not be consolidated with the debtors' assets or estates. The consummation of any offering of second lien notes may also be subject to the satisfaction of certain other conditions.