**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMERICAN MEDIA, INC., *et al.*,[1] | ) Case No. 10-16140 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW**
**AND ORDER (I) APPROVING (A) THE DEBTORS'**
**DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. §§ 1125**
**AND 1126(b), (B) SOLICITATION OF VOTES AND SOLICITATION AND ELECTION**
**PROCEDURES, (C) FORMS OF BALLOTS, AND (D) THE ELECTION FORM**
**AND (II) CONFIRMING THE DEBTORS' AMENDED JOINT PREPACKAGED**
**PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

This order (this "***Confirmation Order***") is entered to effectuate confirmation of the

*Debtors' Amended Joint Prepackaged Plan of Reorganization Under Chapter 11 of the*

*Bankruptcy Code* dated December 15, 2010 (Docket No. 115) (the "***Plan***") and attached hereto

as Exhibit A and approve the adequacy of (i) the *Disclosure Statement Relating to the Debtors'*

*Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket

No. 19) (the "***Disclosure Statement***"), (ii) the solicitation of votes and solicitation and election

procedures, (iii) the forms of ballots and (iv) the election form.  The Debtors having:

    a.    commenced, on November 17, 2010 (the "***Petition Date***"), these chapter 11 cases
(collectively, the "***Chapter 11 Cases***") by filing voluntary petitions for relief
under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***");

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  American Media, Inc. (3383); American Media Operations, Inc. (4424); American Media Consumer Entertainment, Inc. (3852); American Media Consumer Magazine Group, Inc. (3863); American Media Distribution & Marketing Group, Inc. (3860); American Media Mini Mags, Inc. (3854); American Media Newspaper Group, Inc. (3864); American Media Property Group, Inc. (4153); Country Music Media Group, Inc. (2019); Distribution Services, Inc. (1185); Globe Communications Corp. (2593); Globe Editorial, Inc. (3859); Mira! Editorial, Inc. (3841); National Enquirer, Inc. (4097); National Examiner, Inc. (3855); Star Editorial, Inc. (9233); and Weider Publications, LLC (1848).

b.      continued to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code section 1107(a) and 1108;

c.      filed, on November 17, 2010, the *Motion Pursuant to Bankruptcy Code Sections 363(b), 365 and 503(b)(1) and Bankruptcy Rules 2002 and 6004 for an Order Authorizing the Debtors to (I) Assume or Enter into Certain Agreements in Connection with the New Financing and Backstop Commitment, (II) Incur and Pay Related Fees and Expenses as Administrative Expenses, (III) Transfer Certain Funds into Escrow and (IV) Establish Special Purpose Entities as Non-Debtor Entities* (Docket No. 17) (the "***Escrow Motion***");

d.      filed, on November 24, 2010, the *Declaration of Zul Jamal in Support of Motion Pursuant to Bankruptcy Code Sections 363(b), 365 and 503(b)(1) and Bankruptcy Rules 2002 and 6004 for an Order Authorizing the Debtors to (I) Assume or Enter into Certain Agreements in Connection with the New Financing and Backstop Commitment, (II) Incur and Pay Related Fees and Expenses as Administrative Expenses, (III) Transfer Certain Funds into Escrow, and (IV) Establish Special Purpose Entities as Non-Debtor Entities* (Docket No. 63);

e.      filed, on November 17, 2010, *Affidavit of Service and Declaration of David Hartie Regarding the Service and Transmittal of Solicitation Packages and the Certification and Tabulation of Ballots Accepting or Rejecting the Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 24) (the "***Voting Certification***") detailing the results of the Plan voting process;

f.      filed, on November 17, 2010, the *Debtors' Motion for an Order (A) Scheduling a Combined Hearing to Consider the Adequacy of the Disclosure Statement and Solicitation and Election Procedures and Confirmation of the Plan, (B) Establishing Deadlines and Procedures to File Objections to the Disclosure Statement, the Solicitation and Election Procedures and the Plan, and (C) Approving the Form and Manner of the Notice of the Combined Hearing* (Docket No. 21) (the "***Scheduling Motion***");

g.      distributed, on November 22, 2010, notice (the "***Combined Notice***") of the combined hearing (the "***Combined Hearing***") to consider the adequacy of the Disclosure Statement and solicitation and election procedures (the "***Solicitation and Election Procedures***") and confirmation of the Plan; consistent with the *Order (A) Scheduling a Combined Hearing to Consider the Adequacy of the Disclosure Statement and Solicitation and Election Procedures and Confirmation of the Plan, (B) Establishing Deadlines and Procedures to File Objections to the Disclosure Statement, the Solicitation and Election Procedures and the Plan, and (C) Approving the Form and Manner of the Notice of Combined Hearing* (Docket No. 47) (the "***Scheduling Order***"); as evidenced by the *Affidavit of Service of Ricardo Tejeda Romero re: Summary of Plan of Reorganization, Notice of Commencement of Chapter 11 Bankruptcy Cases, and Notice of Combined Hearing on Disclosure Statement and Plan Confirmation* (Docket No. 68);

2

h.      filed, on December 1, 2010 an amended notice of the Combined Hearing (Docket No. 78), as evidenced by the *Affidavit of Service of Ricardo Tejeda Romero re: Amended Summary of Plan of Reorganization, Notice of Commencement of Chapter 11 Bankruptcy Cases, and Notice of Combined Hearing on Disclosure Statement and Plan Confirmation Dated December 1, 2010* (Docket No. 79); *See Affidavit of Service of Isidro N. Panizales re: Amended Summary of Plan of Reorganization, Notice of Commencement of Chapter 11 Bankruptcy Cases, and Notice of Combined Hearing on Disclosure Statement and Plan Confirmation Dated December 1, 2010* (Docket No. 80);

i.      published, on November 29, 2010, notice of the Combined Hearing in The New York Times (National Edition), USA Today (National Edition) and the Miami Herald consistent with the Scheduling Order, as evidenced by *Affidavit of Publication of Summary of Plan of Reorganization and Amended Notice of Hearing to Consider (A) Adequacy of the Disclosure Statement and Solicitation and Election Procedures and (B) Confirmation of Plan of Reorganization and Related Matters in the Miami Herald* (Docket No. 90); *Affidavit of Publication of Summary of Plan of Reorganization and Amended Notice of Hearing to Consider (A) Adequacy of the Disclosure Statement and Solicitation and Election Procedures and (B) Confirmation of Plan of Reorganization and Related Matters in the New York Times* (Docket No. 91); *Affidavit of Publication of Summary of Plan of Reorganization and Amended Notice of Hearing to Consider (A) Adequacy of the Disclosure Statement and Solicitation and Election Procedures and (B) Confirmation of Plan of Reorganization and Related Matters in USA Today* (Docket No. 92);

j.      filed, on November 17, 2010, the *Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 20), which was subsequently amended as provided herein, and the *Disclosure Statement Relating to the Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 19);

k.      filed, on December 15, 2010, the *Debtors' Amended Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 115) to reflect certain non-substantive changes to the Plan;

l.      filed, on November 24, 2010, the *Plan Financing Supplement to the Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 65); and *Notice of Filing Plan Financing Supplement to the Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 66);

m.      filed, on December 15, 2010, the *Plan Supplement to the Debtors' Amended Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 116); and *Notice of Filing of Plan Supplement to Debtors' Amended Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 117);

n.　　filed, on December 17, 2010, the *Affidavit of Service and Declaration of David Hartie Regarding the Service and Transmittal of Class 2 Election Form and the Tabulation of Elections* (Docket No. [ ]) (the "**Election Certification**")*;* and

o.　　filed, on December 17, 2010, the *Debtors' Memorandum of Law in Support of Entry of an Order (I) Approving (A) the Debtors' Disclosure Statement Pursuant to 11 U.S.C. §§ 1125 and 1126(b), (B) Solicitation of Votes and Solicitation and Election Procedures, (C) Forms of Ballots, and (D) Form of Ballot, and (II) Confirming the Debtors' Amended Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Confirmation Brief**") (Docket No. [ ]); the *Declaration of Christopher Polimeni in Support of Confirmation of the Debtors' Amended Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Polimeni Declaration**") (Docket No. [ ]); and the *Declaration of Zul Jamal in support of the Debtors' Amended Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Jamal Declaration**") (Docket No. [ ]), each in support of confirmation of the Plan.

This Court having:

a.　　entered, on November 19, 2010, the Scheduling Order (Docket No. 47);

b.　　entered on November 29, 2010, the *Order Authorizing the Debtors to (I) Assume or Enter into Certain Agreements in Connection with the New Financing and Backstop Commitment, (II) Incur and Pay Related Fees and Expenses as Administrative Expenses, (III) Transfer Certain Funds into Escrow and (IV) Establish Special Purpose Entities as Non-Debtor Entities* (Docket No. 72);

c.　　set December 20, 2010, at 10:00 a.m. (Prevailing Eastern Time), as the date and time for the commencement of the Combined Hearing;

d.　　reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Polimeni Declaration, the Jamal Declaration and all pleadings, exhibits, statements, responses and comments regarding confirmation;

e.　　heard the statements, arguments and objections made by counsel in respect of confirmation;

f.　　considered all oral representations, testimony, documents, filings and other evidence regarding confirmation; and

g.　　taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Combined Hearing, the

Plan and all modifications thereto have been adequate and appropriate as to all parties affected or

to be affected by the Plan and the transactions contemplated thereby and that any party in interest

4

so affected has had the opportunity to object to confirmation of the Plan and the adequacy of the

Disclosure Statement; and, after due deliberation and based upon the record described above, it

appearing to the Court that the legal and factual bases set forth in the documents filed in support

of confirmation of the Plan and the adequacy of the Disclosure Statement and presented at the

Combined Hearing establish just cause for the relief granted herein; the Court hereby makes and

issues the following Findings of Fact, Conclusions of Law and Order:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:**

**A.**    **Findings of Fact and Conclusions of Law**

1.    The findings of fact and conclusions of law stated in this Confirmation Order

shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

applicable to this proceeding by Bankruptcy Rule 9014.  To the extent any finding of fact shall

be determined to be a conclusion of law, it shall be so deemed, and to the extent a conclusion of

law shall be determined to be a finding of fact, it shall be so deemed.

**B.**    **Jurisdiction and Venue**

2.    This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§

157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the

Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has jurisdiction to

determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and

should be confirmed.

**C.**    **Commencement and Joint Administration of the Chapter 11 Cases**

3.    On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing

voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.  By prior

order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 (Docket No. 38). The Debtors have operated their businesses and managed their properties as debtors in possession since the Petition Date pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 Cases.

### D.    Filing of the Plan

4.    On November 17, 2010, the Debtors filed the Plan (Docket No. 20) and the Disclosure Statement (Docket No. 19). On November 24, 2010, the Debtors filed the Plan Financing Supplement[2] with the indicative terms of the New First Lien Notes and the New Second Lien Notes (Docket No. 65). On December 15, 2010, the Debtors filed non-substantive amendments to the Plan (Docket No. 114). On December 15, 2010, the Debtors filed the Plan Supplement, which included the following documents: (a) the New First Lien Indenture; (b) the New Second Lien Indenture; (c) the Purchase Agreement for New First Lien Notes; (d) the Registration Rights Agreement for New First Lien Notes; (e) the Registration Rights Agreement for New Second Lien Notes; (f) the Escrow Agreement for New First Lien Notes; (g) the Intercreditor Agreement Among Reorganized Debtors, Collateral Agent for the New Revolver Facility Lenders, Trustee and Collateral Agent for New First Lien Note Holders, and Trustee and Collateral Agent for New Second Lien Note Holders; (h) the Intercreditor Agreement Among Reorganized Debtors, Collateral Agent for New Revolver Facility Lenders, and Trustee and Collateral Agent for New First Lien Note Holders; (i) the Stockholders Agreement; (j) the Restated Bylaws; (k) the Restated Certificates of Incorporation; (l) the Equity Incentive Plan;

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or Disclosure Statement.

(m) the Director Severance Plan; (n) the Emergence Incentive Plan; (o) the identity of members of the New Boards and the initial officers of the Reorganized Debtors; and (p) the New Revolver Credit Facility Credit Agreement (Docket No. 116).  The documents contained in the Plan Financing Supplement and the Plan Supplement were filed in draft form and remain subject to modification and amendment, in either case, on terms consistent with the Plan and this Confirmation Order.

### E.    Judicial Notice

5.    The Court takes judicial notice of (and deems admitted into evidence for confirmation of the Plan and approval of the Disclosure Statement) the docket of the Chapter 11 Cases and all related adversary proceedings, appeals and District Court proceedings, maintained by the clerk of the applicable court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts and all evidence and arguments made, proffered or adduced at the hearings held before the applicable court during the pendency of the Chapter 11 Cases.  Any resolutions of objections to confirmation of the Plan or approval of the Disclosure Statement explained at the Combined Hearing are hereby incorporated by reference.  All unresolved objections, statements and reservations of rights are hereby overruled on the merits.

### F.    Transmittal of Solicitation Package

6.    As set forth in the Voting Certification, on October 30, 2010, the Debtors, through their solicitation agent, Kurtzman Carson Consultants LLC ("***KCC***"), caused the applicable forms of ballots, in the forms attached to the Scheduling Motion as Exhibit B (the "***Ballots***"), and copies of the Disclosure Statement and Plan (collectively with the Ballots, the "***Solicitation Package***") to be served and distributed as required by the Bankruptcy Code, Bankruptcy Rules

3017 and 3018, the Disclosure Statement, the Local Bankruptcy Rules for the United States

Bankruptcy Court for the Southern District of New York (the "***Local Rules***"), all other applicable

provisions of the Bankruptcy Code, the Scheduling Order, and all other rules, laws, and

regulations applicable to such solicitation.  The Plan and the Disclosure Statement were

transmitted to all creditors entitled to vote on the Plan and sufficient time was prescribed for

creditors to vote to accept or reject the Plan.  The Solicitation Package was transmitted and

served in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy

Rules, including Bankruptcy Rule 3017(d), the Local Rules, the Amended Procedural Guidelines

for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern

District of New York, General Order M-387, dated November 24, 2009 (the "***Prepack***

***Guidelines***"), the Scheduling Order and all other applicable rules, laws, and regulations.  Such

transmittal and service was adequate and sufficient under the circumstances and no other or

further notice is or shall be required.

### G.    Mailing and Publication of Combined Notice

7.    On November 22, 2010, the Debtors caused the Combined Notice to be mailed to

all of the Debtors' known creditors and Interest Holders of record.  On December 1, 2010, the

Debtors caused the Amended Summary of Plan of Reorganization, Notice of Commencement of

Chapter 11 Bankruptcy Cases, and Notice of Combined Hearing on Disclosure Statement and

Plan Confirmation, attached to the Scheduling Order, to be mailed to all of the Debtors' known

creditors and Interest Holders of record.  Additionally, the Debtors published the Combined

Notice in The New York Times (National Edition), USA Today (National Edition) and the Miami

Herald on November 29, 2010.  Publication of the Combined Notice was in substantial

compliance with the Scheduling Order and Bankruptcy Rule 2002(l).  The Debtors have given

proper, adequate and sufficient notice of the hearing to approve the Disclosure Statement as required by Bankruptcy Rule 3017(a). The Debtors have given proper, adequate and sufficient notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d). Due, adequate, and sufficient notice of the Combined Hearing, along with deadlines for filing objections to the Plan and the Disclosure Statement, has been given to all known Holders of Claims and Interests substantially in accordance with the procedures set forth in the Scheduling Order. No other or further notice is or shall be required.

### H.    Objections

8.       All objections and all reservations of rights that have not been withdrawn, waived or settled pertaining to confirmation of the Plan and adequacy of the Disclosure Statement are overruled on the merits.

### I.    Adequacy of Disclosure Statement

9.       The adequacy of the Disclosure Statement is governed by Bankruptcy Code section 1125(a). The Disclosure Statement contains adequate information as that term is defined in Bankruptcy Code section 1125(a) and complies with any additional requirements of the Bankruptcy Code and the Bankruptcy Rules. Specifically, but without limitation, the Disclosure Statement complies with the requirements of Bankruptcy Rule 3016(c) by sufficiently describing in specific and conspicuous bold language the provisions of the Plan that provide for releases and injunctions against conduct not otherwise enjoined under the Bankruptcy Code and sufficiently identifies the persons and entities that are subject to the releases and injunctions.

### J.    Solicitation

10.      Bankruptcy Code sections 1125(g) and 1126(b) apply to the solicitation of acceptances and rejections of the Plan prior to the commencement of these Chapter 11 Cases.

The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act of 1933 (as amended, and including the rules and regulations promulgated thereunder, the "***Securities Act***") and applicable state and local securities laws, and no other non-bankruptcy law applies to the solicitation.  Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Prepack Guidelines, and all other rules, laws, and regulations.  In particular, the solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018.  The Plan and the Disclosure Statement were transmitted to all creditors entitled to vote on the Plan and sufficient time was prescribed for such creditors to accept or reject the Plan.  The solicitation materials and solicitation procedures comply with Bankruptcy Code section 1126, thereby satisfying the requirements of Bankruptcy Rule 3018.  The Debtors' procedures for transmitting the Disclosure Statement, the Plan, the Ballots, and the voting instructions are adequate and comply with the requirements of Bankruptcy Rule 3017(d) and (e), all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Prepack Guidelines, the Scheduling Order, and all other applicable rules, laws, and regulations.

11.    The form of the Ballots was adequate and appropriate and complied with Bankruptcy Rule 3018(c).  The form of the Ballots was sufficiently consistent with Official Form No. 14 and the form of ballot annexed to the Prepack Guidelines and adequately addressed the particular needs of these Chapter 11 Cases and was appropriate for each Class entitled to vote to accept or reject the Plan.

### K.    Good Faith Solicitation

12.    All persons who solicited votes on the Plan, including any such persons released pursuant to Section 10 of the Plan, solicited such votes in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by Bankruptcy Code section 1125(e) as well as the exculpation and limitation of liability provisions set forth in Section 10 of the Plan.

### L.    Voting Certification

13.    On November 17, 2010, KCC filed the Voting Certification, certifying the method and results of the ballot tabulation for each of the Classes entitled to vote under the Plan (the "*Voting Classes*").  Under the Plan, Holders of Claims in Classes 2, 5, 6 and 7 are impaired and, therefore, were entitled to vote on the Plan.  As evidenced by the Voting Certification, Holders of Claims in Classes 2, 5 and 6 voted to accept the Plan.  As further evidenced by the Voting Certification, Holders of Claims in Class 7 voted to reject the Plan.  All procedures used to tabulate the Ballots were fair and reasonable and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Prepack Guidelines, the Scheduling Order and all other applicable rules, laws, and regulations.

### M.    Election Certification

14.    On December 17, 2010, KCC filed the Election Certification, certifying the method and results of the Class 2 election for Holders of Term Facility Claims (other than the Backstop Parties) to put the New Second Lien Notes they would otherwise receive pursuant to the Plan to the Backstop Parties.  As further evidenced by the Election Certification, the procedures used to tabulate the election forms relating to such election were fair and reasonable.

**N.    Modifications to the Plan**

15.    Subsequent to solicitation of the Plan, the Debtors made certain non-material modifications to the Plan in response to various comments received from parties in interest, including the U.S. Trustee.  None of the modifications made since the solicitation adversely affects the treatment of any Holder of a Claim or Interest under the Plan.  Accordingly, pursuant to Bankruptcy Code section 1127(a), none of the modifications require additional disclosure under Bankruptcy Code section 1125 or resolicitation of votes under Bankruptcy Code section 1126.

**O.    Bankruptcy Rule 3016**

16.    The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the clerk of the Court simultaneously with the Plan satisfies Bankruptcy Rule 3016(b).

**P.    Burden of Proof**

17.    As more fully set forth herein, the Debtors, as proponents of the Plan, have met their burden of proving each of the elements of Bankruptcy Code sections 1129(a) and 1129(b) by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation of the Plan.

**Q.    Compliance with the Requirements of Bankruptcy Code Section 1129**

18.    The Plan complies with all applicable provisions of Bankruptcy Code section 1129 as follows:

**(i)    Section 1129(a)(1) – Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

19.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by Bankruptcy Code section 1129(a)(1), including, without limitation, sections 1122 and 1123.

(a)    Sections 1122 and 1123(a)(1) – Proper Classification

20.    The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  Pursuant to Bankruptcy Code sections 1122(a) and 1123(a)(1), Section 3 of the Plan provides for the separate classification of Claims and Interests into ten Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims and Priority Tax Claims, which are addressed in Section 2 of the Plan and which are not required to be designated as separate Classes pursuant to Bankruptcy Code section 1123(a)(1)).  Valid business, factual and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not done for any improper purpose and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.

21.    As required by Bankruptcy Code section 1122(a), each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the requirements of Bankruptcy Code sections 1122(a), 1122(b) and 1123(a)(1) have been satisfied.

(b)    Section 1123(a)(2)—Specification of Unimpaired Classes

22.    Section 3 of the Plan specifies that Classes 1, 3, 4, and 8 are unimpaired under the Plan.  Additionally, Section 2 of the Plan specifies that Administrative Claims and Priority Tax

Claims are unimpaired, although these Claims are not classified under the Plan. Accordingly, the requirements of Bankruptcy Code section 1123(a)(2) have been satisfied.

(c)      Section 1123(a)(3)—Specification of Treatment of Impaired Classes

23.      The Plan specifies in Section 3 that Classes 2, 5, 6, 7, 9 and 10 are impaired under the Plan and sets forth the treatment of the impaired Classes in Section 4 of the Plan, thereby satisfying Bankruptcy Code section 1123(a)(3).

(d)      Section 1123(a)(4)—No Discrimination

24.      Section 4 of the Plan provides for the same treatment for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Accordingly, the Plan satisfies Bankruptcy Code section 1123(a)(4).

(e)      Section 1123(a)(5)—Adequate Means for Plan Implementation

25.      Section 5 of the Plan and various other provisions of the Plan specifically provide in detail adequate and proper means for implementation of the Plan including, but not limited to: (i) the distribution of New Second Lien Financing; (ii) the offer by the Backstop Parties to purchase New Second Lien Notes; (iii) the issuance of New Common Stock; (iv) the cancellation of existing securities and agreements; (v) the entry into a Stockholders Agreement by the Reorganized Debtors and the parties that receive New Common Stock under the Plan; (vi) the cancellation of liens; and (vii) the substantive consolidation of the Debtors' estates. In addition, Section 5 of the Plan provides for the establishment of an Equity Incentive Plan, a Director Severance Plan and an Emergence Incentive Plan. Moreover, the Reorganized Debtors will have, immediately upon the Effective Date, sufficient Cash to make all payments required to be

14

made on the Effective Date pursuant to the terms of the Plan.  Accordingly, the requirements of

Bankruptcy Code section 1123(a)(5) have been satisfied.

(f)    Section 1123(a)(6)—Voting Power of Equity Securities

26.    Section 5.2 of the Plan provides that the organizational documents of each

Reorganized Debtor shall be amended as necessary to satisfy the provisions of the Plan and the

Bankruptcy Code, including section 1123(a)(6).  The Restated Certificates of Incorporation

provide that the Reorganized Debtors shall not issue any non-voting equity securities to the

extent required by Bankruptcy Code section 1123(a)(6).  Accordingly, the Plan satisfies

Bankruptcy Code section 1123(a)(6).

(g)    Section 1123(a)(7)—Selection of Officers and Directors

27.    The identity and affiliations of the members of the New Boards as of the Effective

Date are listed in Exhibit O to the Plan Supplement as filed on December 15, 2010.  The

Restated Certificates of Incorporation of Reorganized AMI and each of the Reorganized Debtors

describe the manner of the selection of additional members of the New Boards following the

Effective Date.  Section 5 of the Plan describes the manner of selection of officers and directors

for the Reorganized Debtors.  The selection of the initial directors and officers of the

Reorganized Debtors was, is and will be consistent with the interests of Holders of Claims and

Interests and public policy.  Accordingly, the requirements of Bankruptcy Code section

1123(a)(7) have been satisfied.

(h)    Section 1123(b)—Discretionary Contents of the Plan

28.    The Plan contains various provisions that may be construed as discretionary but

are not required for confirmation under the Bankruptcy Code.  As set forth below, such

discretionary provisions comply with Bankruptcy Code section 1123(b) and are not inconsistent

15

with the applicable provisions of the Bankruptcy Code.  Thus, Bankruptcy Code section 1123(b)

is satisfied.

*i.    Section 1123(b)(1)-(2) – Claims and Executory Contracts*

29.    Pursuant to Bankruptcy Code sections 1123(b)(1) and 1123(b)(2), Section 3 of the

Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests, and

Section 8 of the Plan provides for the assumption, assumption and assignment, or rejection of the

executory contracts and unexpired leases of the Debtors not previously assumed, assumed and

assigned, or rejected pursuant to Bankruptcy Code section 365 and appropriate authorizing

orders of the Court.

*ii.    Section 1123(b)(3)— Releases, Exculpation, Injunction, and
Preservation of Claims and Causes of Action*

30.    **Release by the Debtors**.  The releases and discharges of Claims and Causes of

Action described in Section 10.7 of the Plan (the "***Debtor Release***") releases certain parties

defined in the Plan as the "***Released Parties***."  The Released Parties include (i) the Debtors and

Reorganized Debtors; (ii) any direct or indirect shareholder of the Debtors, and such

shareholder's respective directors, officers, partners, members, representatives, employees,

professional advisors, sub-advisors, managers, affiliated management companies and managing

and executive directors; (iii) the current and former (in each case, as of the Effective Date)

directors, officers, employees, professional advisors, sub-advisors, managers, affiliated

management companies, and managing and executive directors of the Debtors; (iv) the members

of the Committee and their respective directors, officers, partners, members, representatives,

employees, professional advisors, sub-advisors, managers, and managing and executive

directors; (v) the Indenture Trustees and their respective directors, officers, partners, members,

representatives, employees, and professional advisors; (vi) the Term Facility Lenders, the

Revolver Lenders, the Administrative Agent, the collateral agent and other agents under the 2009

Credit Agreement and their respective directors, officers, partners, members, representatives,

employees, and professional advisors; (vii) the New First Lien Notes Holders and the indenture

trustee, collateral agent and escrow agent under the New First Lien Indenture and their respective

directors, officers, partners, members, representatives, employees and professional advisors;

(viii) the New Second Lien Notes Holders and the indenture trustee, collateral agent and escrow

agent under the New Second Lien Indenture and their respective directors, officers, partners,

members, representatives, employees and professional advisors; (ix) the New Revolver Facility

Lenders and the New Revolver Facility administrative agent and their respective directors,

officers, partners, members, representatives, employees and professional advisors; (x) the

Backstop Parties, and their respective directors, officers, partners, members, representatives,

employees, and professional advisors; (xi) the indenture trustee under the New PIK Notes

Indenture and the Holders of the New PIK Notes, if any, and their respective directors, officers,

partners, members, representatives, employees and professional advisors; (xii) Holders of New

Common Stock and such Holder's respective directors, officers, partners, members,

representatives, employees, professional advisors, sub-advisors, managers, affiliated

management companies and managing and executive directors; and (xiii) Holders of the New

Preferred Stock, if any, and such Holder's respective directors, officers, partners, members,

representatives, employees, professional advisors, sub-advisors, managers, affiliated

management companies and managing and executive directors.

     31.    **Third Party Releases**.  The releases of Claims and Causes of Action by Holders

of Claims and Interests described in Section 10.8 of the Plan (collectively, the "***Third Party***

***Releases***") release the Released Parties.

32.    **Injunction**.  The injunction provisions described in Sections 10.5 and 10.6 of the

Plan (the "***Plan Injunction***") permanently enjoin all Persons who have held, hold or may hold

Claims against or Interests in any Debtor, from and after the Effective Date, from (i)

commencing or continuing in any manner any action or other proceeding of any kind on any

such Claim or Interest against any Reorganized Debtor, (ii) the enforcement, attachment,

collection or recovery by any manner or means of any judgment, award, decree or order against

any Reorganized Debtor with respect to any such Claim or Interest, (iii) creating, perfecting or

enforcing any encumbrance of any kind against any Reorganized Debtor, or against the property

or interests in property of any Reorganized Debtor, as applicable with respect to any such Claim

or Interest, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any

obligation due from any Reorganized Debtor, or against the property or interests in property of

any Reorganized Debtor with respect to any such Claim or Interest, and (v) pursuing any Claim

released pursuant to Sections 10.7 and 10.8 of the Plan.  Section 10.5(a) of the Plan does not

enjoin any Claims that have been alleged or could have been alleged in that certain litigation in

the United States District Court for the Southern District of New York captioned *Anderson News,*

*LLC, et al. v. American Media, Inc., et al*., Case No. 09-Civ.-2227 (PAC) and the appeal of the

August 2, 2010 order dismissing such action, currently pending in the United States Court of

Appeals for the Second Circuit (collectively, the "***Anderson Litigation***").

33.    In addition, upon entry of the Confirmation Order, all Holders of Claims and

Interests and other parties in interest, along with their respective present or former employees,

agents, officers, directors or principals, are enjoined from taking any actions to interfere with the

implementation or Consummation of the Plan.

34.   **Exculpation**.  The exculpation provisions described in Section 10.4 of the Plan
(the "*Exculpation*") exculpate the Released Parties from certain liability arising from the
Chapter 11 Cases subject to a limited carve-out solely for gross negligence, willful misconduct,
criminal acts and fraud.  Nothing in Section 10.4 of the Plan (1) exculpates any Person or Entity
from any liability resulting from any act or omission constituting fraud, willful misconduct, gross
negligence, criminal conduct, malpractice, misuse of confidential information that causes
damages or ultra vires act as determined by a Final Order or (2) limits the liability of the
professionals of the Released Parties to their respective clients pursuant to N.Y. Comp. Codes R.
& Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).

35.   Each of the Debtor Releases, the Third Party Releases, the Plan Injunction and the
Exculpation: (i) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d);
(ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the
Bankruptcy Code; (iii) is an integral element of the transactions incorporated into the Plan; (iv)
confers a material benefit on, and is in the best interests of, the Debtors, their Estates and their
creditors; (v) is important to the overall objectives of the Plan to finally resolve all Claims among
or against the parties in interest in the Chapter 11 Cases with respect to the Debtors, their
organization, capitalization, operation and reorganization; and (vi) is consistent with Bankruptcy
Code sections 105, 1123, 1129, and other applicable provisions.

36.   **Preservation of Claims and Causes of Action**.  Section 10.9 of the Plan
appropriately provides for the preservation by the Debtors of any action, cause of action,
liability, obligation, right, suit, debt, sum of money, damage, judgment, claim and demand
whatsoever, whether known or unknown, in law, equity or otherwise (the "*Causes of Action*"), in
accordance with Bankruptcy Code section 1123(b)(3)(B).  The provisions regarding the retained

Causes of Action in the Plan are appropriate and are in the best interests of the Debtors, the

Estates and all Holders of Claims and Interests.

(i)    Section 1123(d)—Cure of Defaults

37.    Section 8.2 of the Plan provides for the satisfactions of any monetary defaults

under each executory contract and unexpired lease to be assumed pursuant to the Plan.

Accordingly, the requirements of Bankruptcy Code section 1123(d) are satisfied.

**(ii)    Section 1129(a)(2)—Compliance of the Debtors and Others With the
Applicable Provisions of the Bankruptcy Code**

38.    The Debtors have complied with the applicable provisions of the Bankruptcy

Code, the Bankruptcy Rules, the Scheduling Order, and other orders of this Court, thereby

satisfying Bankruptcy Code section 1129(a)(2).  In particular, the Debtors are properly debtors

under Bankruptcy Code section 109.  The Debtors are proper proponents of the Plan pursuant to

Bankruptcy Code section 1121(a).  The Debtors, as proponents of the Plan, complied with the

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the

Prepack Guidelines and the Scheduling Order in transmitting the Plan, the Disclosure Statement,

the Ballots and notices, and in soliciting and tabulating votes on the Plan.

**(iii)    Section 1129(a)(3)—Proposal of Plan in Good Faith**

39.    The Debtors have proposed the Plan in good faith, for proper purposes and not by

any means forbidden by law, thereby satisfying Bankruptcy Code section 1129(a)(3).  In

determining that the Plan has been proposed in good faith, the Court has examined the totality of

the circumstances surrounding the filing of the Chapter 11 Cases, the formulation of the Plan and

all modifications thereto.  The Chapter 11 Cases were filed, and the Plan and all modifications

thereto were proposed, with the legitimate and honest purpose of reorganizing and maximizing

the value of the Debtors and the recovery to claimholders.  Therefore, the Debtors have proposed

the Plan in good faith and not by any means forbidden by law, and Bankruptcy Code section

1129(a)(3) is satisfied with respect to the Plan.

### (iv)     Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable

40.     All fees and expenses of professionals retained in the Chapter 11 Cases remain

subject to final review for reasonableness by the Court.  Pursuant to Section 2.2, professionals

are required to file their final fee applications with the Court no later than forty-five (45) days

after the Effective Date.  These applications remain subject to Court approval under the standards

established by the Bankruptcy Code, including the requirements of Bankruptcy Code sections

327, 328, 330, 331, 503(b) and 1103, as applicable.  Finally, Section 11(h) of the Plan provides

that the Court will retain jurisdiction after the Effective Date to hear and determine all

applications for allowance of compensation or reimbursement of expenses authorized pursuant to

the Bankruptcy Code or the Plan, including requests by professionals.  Accordingly, the Plan

fully complies with the requirements of Bankruptcy Code section 1129(a)(4).

### (v)     Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy

41.     The Plan complies with the requirements of Bankruptcy Code section 1129(a)(5)

because, in the Disclosure Statement, the Plan and/or the Plan Supplement, the Debtors have

disclosed the following:  (a) the identity and affiliations of each proposed director, each proposed

officer and the manner in which additional officers and directors of the Reorganized Debtors will

be chosen following confirmation; and (b) the identity and nature of any compensation for any

insider who will be employed or retained by the Reorganized Debtors.  The method of

appointment of directors and officers of the Reorganized Debtors was, is and will be consistent

with the interests of Holders of Claims and Interests and public policy.  Accordingly, the

requirements of Bankruptcy Code section 1129(a)(5) are satisfied.

21

### (vi)    Section 1129(a)(6)—Approval of Rate Changes

42.    The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval.  Therefore, Bankruptcy Code section 1129(a)(6) is inapplicable to the Chapter 11 Cases.

### (vii)    Section 1129(a)(7)—Best Interests of Holders of Claims and Interests

43.    The liquidation analysis attached as <u>Exhibit I</u> to the Disclosure Statement (the "*Liquidation Analysis*"), the Polimeni Declaration, the Jamal Declaration and other evidence proffered or adduced at the Confirmation Hearing (i) are reasonable, persuasive and credible, (ii) are based upon reasonable and sound assumptions, (iii) have not been controverted by other evidence, (iv) provide a reasonable estimate of the liquidation values of the Debtors in the event the Debtors were liquidated under chapter 7 of the Bankruptcy Code, and (v) establish that each Holder of a Claim or Interest in an impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.  Therefore, the Plan satisfies Bankruptcy Code section 1129(a)(7).

44.    Specifically, the Liquidation Analysis properly estimated that the net liquidation value of the Debtors would be comprised of, among other things, the Debtors' cash on hand, trade receivables and property value after reductions for certain liquidation fees and costs likely to be incurred in a chapter 7 case, including estimated expenses of the trustee and its professionals as well as wind-down expenses.  The Liquidation Analysis assumes that, in the hypothetical chapter 7 cases, the bankruptcy trustee would wind down the Debtors' operations in

an orderly manner and liquidate substantially all of the Debtors' assets over a six-month period.

Accordingly, the requirements of Bankruptcy Code section 1129(a)(7) are satisfied.

> **(viii)    Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class**

45.       Classes 1, 3, 4 and 8 are unimpaired by the Plan and therefore, under Bankruptcy

Code section 1126(f), such Classes are conclusively presumed to have accepted the Plan.  Class

9, Intercompany Claims, is impaired but deemed to have accepted the Plan because the Debtors,

at their discretion, may adjust, continue or discharge Intercompany Claims pursuant to the Plan.

Classes 2, 5, 6 and 7 were entitled to vote on the Plan and Classes 2, 5 and 6 voted to accept the

Plan.  Accordingly, Bankruptcy Code section 1129(a)(8) has been satisfied with respect to

Classes 1-6, 8 and 9.

46.       Class 7 rejected the Plan and Class 10 is deemed to reject the Plan pursuant to

Bankruptcy Code section 1126(g), but, as found in section (xiv) below, the Plan is confirmable

under Bankruptcy Code section 1129(b) notwithstanding the rejections by such Classes.

Therefore, Bankruptcy Code section 1129(a)(8) has not been satisfied with respect to these

Classes.

> **(ix)    Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Bankruptcy Code Section 507(a)**

47.       The treatment of Administrative Claims and Priority Non-Tax Claims under the

Plan satisfies the requirements of Bankruptcy Code sections 1129(a)(9)(A) and (B), and the

treatment of Priority Tax Claims under the Plan satisfies the requirements of Bankruptcy Code

section 1129(a)(9)(C).

> **(x)    Section 1129(a)(10)—Acceptance by at Least One Impaired Class**

48.       As set forth in the Voting Certification, at least one impaired Class of Claims

voted to accept the Plan.  Specifically, Holders of Claims in Classes 2, 5 and 6 voted to accept

the Plan. As such, there is at least one Class of Claims that is impaired under the Plan that has

accepted the Plan, determined without including any acceptance of the Plan by any insider (as

defined by the Bankruptcy Code). Accordingly, the requirements of Bankruptcy Code section

1129(a)(10) have been satisfied.

### (xi) Section 1129(a)(11)—Feasibility of the Plan

49. The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The Plan does not

provide for the liquidation of all or substantially all of the property of the Debtors. The financial

projections in Exhibit G to the Disclosure Statement, the Polimeni Declaration, the Jamal

Declaration and the evidence proffered or adduced at the Confirmation Hearing: (a) are

reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was

prepared, presented or proffered; (b) utilize reasonable and appropriate methodologies and

assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is

feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need

for further financial reorganization, of the Reorganized Debtors or any successor to the

Reorganized Debtors under the Plan except as provided in the Plan; and (e) establish that the

Reorganized Debtors will have sufficient funds available to meet their obligations under the

Plan. Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been

satisfied.

### (xii) Section 1129(a)(12)—Payment of Bankruptcy Fees

50. The Debtors have paid or will pay by the Effective Date fees payable under 28

U.S.C. § 1930. On and after the Effective Date, the Reorganized Debtors shall pay the

applicable U.S. Trustee fees for each of the Reorganized Debtors when due in the ordinary

course until such time as the Court enters a final decree in such Reorganized Debtor's Chapter 11

24

Case.  Accordingly, the requirements of Bankruptcy Code section 1129(a)(12) have been
satisfied.

### (xiii)    Section 1129(a)(13)—Retiree Benefits

51.    Bankruptcy Code section 1129(a)(13) requires a plan to provide for "retiree
benefits" (as defined in section 1114 of the Bankruptcy Code) at levels established pursuant to
section 1114 of the Bankruptcy Code.  Section 8.5 of the Plan provides that all employee
compensation and benefit plans entered into before or after the Petition Date and not since
terminated shall be deemed to be, and shall be treated as if they were, executory contracts to be
assumed pursuant to the Plan.  The Debtors' obligations under such plans and programs shall
survive confirmation of the Plan.  Accordingly, the requirements of Bankruptcy Code section
1129(a)(13) have been satisfied.

### (xiv)    Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Class

52.    Notwithstanding the fact that Class 7 has voted not to accept the Plan and Class
10 is deemed to reject the Plan (collectively, the "***Rejecting Classes***"), the Plan may be
confirmed pursuant to Bankruptcy Code section 1129(b)(1) because:  (a) Classes 2, 5 and 6 are
impaired and have voted to accept the Plan; and (b) the Plan does not discriminate unfairly and is
fair and equitable with respect to the Rejecting Classes.  Thus, the Plan may be confirmed
notwithstanding the Debtors' failure to satisfy Bankruptcy Code section 1129(a)(8).  After entry
of the Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be
binding upon the members of the Rejecting Classes.

53.    The Plan does not unfairly discriminate because members within each Class are
treated similarly.  Accordingly, the Plan does not discriminate unfairly with respect to the
Rejecting Classes or any other Class of Claims or Interests.

54.    To determine whether a plan is "fair and equitable" with respect to a class of unsecured claims, Bankruptcy Code section 1129(b)(2)(B) provides that "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property . . . ."  There are no Classes junior to Class 7 that will receive any distribution under the Plan.

55.    To determine whether a plan is "fair and equitable" with respect to a class of interests, Bankruptcy Code section 1129(b)(2)(C)(ii) provides that "the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property."  There are no Classes junior to the Class 10 that will receive any distribution under the Plan.  Therefore, the Plan is fair and equitable and satisfies the requirements of Bankruptcy Code section 1129(b).

56.    Additionally, with respect to Intercompany Claims, Class 9 is impaired and deemed to accept the Plan.  The preservation of Intercompany Claims is a means to preserve the Reorganized Debtors' corporate structure that does not have any economic substance and that does not enable any Claim Holder or Interest Holder junior to the Rejecting Classes to retain or recover any value under the Plan.  Accordingly, the impaired status of Class 9 is consistent with the requirement that no Holders of Claims or Interests junior to the Holders of Claims or Interests in the Rejecting Classes receive or retain any property under the Plan on account of such Claims or Interests.  Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by Bankruptcy Code section 1129(b), and may be confirmed under Bankruptcy Code section 1129(b) notwithstanding the Rejecting Classes' rejection of the Plan.

**(xv)    Section 1129(c)—Only One Plan**

57.    Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Cases.  Accordingly, the requirements of Bankruptcy Code section 1129(c) have been satisfied.

**(xvi)    Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes**

58.    No governmental unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Accordingly, the requirements of Bankruptcy Code section 1129(d) have been satisfied.

**R.    Satisfaction of Confirmation Requirements**

59.    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129.

**S.    Executory Contracts**

60.    The Debtors have exercised reasonable business judgment in determining whether to assume or reject their executory contracts and unexpired leases pursuant to Section 8 of the Plan.  Each assumption of an executory contract or unexpired lease pursuant to Section 8 of the Plan shall be legal, valid and binding upon the applicable Debtor or Reorganized Debtor and their assignees or successors and all non-Debtor parties (and their assignees or successors) to such executory contract or unexpired lease, all to the same extent as if such assumption had been effectuated pursuant to an order of the Court entered before the date of the entry of this Confirmation Order under Bankruptcy Code section 365.

### T.    Issuance of New Common Stock

61.    Issuance of the New Common Stock is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and their creditors.  The Debtors are authorized, without further approval of this Court or any other party, to issue the New Common Stock in accordance with the Plan, execute the Stockholders Agreement and to execute and deliver all agreements, documents, instruments, and certificates relating thereto.

### U.    Distributions of New Common Stock and New Second Lien Notes Are Exempt From the Securities Act

62.    The distribution of the New Common Stock pursuant to the Plan in exchange for the Subordinated Notes and the 2011 Notes is exempt from the requirements of section 5 of the Securities Act, as amended, and any state or local laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealing in, a security pursuant to Bankruptcy Code section 1145(a).

63.    The distribution of the New Second Lien Notes pursuant to the Plan is exempt from the requirements of section 5 of the Securities Act, as amended, and any state or local laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealing in, a security pursuant to Bankruptcy Code section 1145(a), section 3(a)(9) of the Securities Act and section 4(2) of the Securities Act.

### V.    New Financing

64.    On the Effective Date, (i) AMO will merge into the Reorganized AMI and (ii) the Escrow Issuer and New LLC will merge into Reorganized AMI, which will assume the Escrow Issuer's obligations under the New First Lien Notes, the New First Lien Indenture and the related registration rights agreement, (iii) the Reorganized Debtor Subsidiaries will guarantee Reorganized AMI's obligations under the New First Lien Notes and the New First Lien Indenture

and (iv) the proceeds of the New First Lien Notes Offering (and any other amounts held in escrow) will be released from escrow.  In addition, on the Effective Date, (i) Reorganized AMI will enter into the New Second Lien Indenture and the New Revolver Credit Facility Agreement and (ii) the Reorganized Debtor Subsidiaries will guarantee Reorganized AMI's obligations under the New Second Lien Indenture and the New Revolver Credit Facility Agreement.

65.      The Reorganized Debtors' assumption or execution of the New First Lien Indenture, the New Second Lien Indenture and the New Revolver Facility Credit Agreement, and all documents related to the foregoing, including the granting of the guarantees, liens and security interests relating thereto (together, the "***New Financing***"), is an exercise of reasonable business judgment, proposed in good faith, critical to the success and feasibility of the Plan and in the best interests of the Debtors, the Reorganized Debtors, their Estates and creditors.  The financial accommodations extended to the Debtors and/or the Reorganized Debtors pursuant to the New Financing are, were and continue to be extended and implemented in good faith and for legitimate business purposes.  The liens, claims, liabilities and obligations of the Debtors and/or the Reorganized Debtors created under the New Financing are valid, binding and enforceable, properly perfected and not subject to avoidance.  All documentation relating to the New Financing will continue to be valid, binding and enforceable agreements.

### W.      Corporate Action

66.      Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including the (a) assumption of the Management Agreements, (b) selection of the directors and officers of the Reorganized Debtors, (c) issuance of the New Common Stock by Reorganized AMI, (d) issuance of the New Second Lien Notes, (e) release of the proceeds of the New First Lien Notes Offering from escrow, (f) assumption of

the obligations under the New First Lien Notes and the New First Lien Indenture and execution

of the New Second Lien Indenture, the New Revolver Facility Credit Agreement and the

registration rights agreement relating to the New Second Lien Notes, (g) the issuance of

guarantees of the New First Lien Notes, the New Second Lien Notes and the New Revolver

Facility Credit Agreement by the Reorganized Debtor Subsidiaries, (h) adoption of the Equity

Incentive Plan and the issuance of awards pursuant to the Plan, (i) adoption of the Director

Severance Plan, (j) implementation of the Emergence Incentive Plan, (k) the execution of the

Stockholders Agreement and (l) all other actions contemplated by the Plan (whether to occur

before, on or after the Effective Date).  All matters provided for in the Plan involving the

corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required

by the Debtors or the Reorganized Debtors in connection with the implementation of the Plan,

shall be deemed to have occurred and shall be in effect upon the Effective Date, without any

requirement of further action by the directors or officers of the Debtors or the Reorganized

Debtors.

### X.    Implementation

67.    All documents and agreements necessary to implement the Plan, including those

contained in the Plan Supplement, and all other relevant and necessary documents (including the

Restated Certificates of Incorporation and the Restated Bylaws of the Reorganized Debtors, the

New First Lien Indenture, the New Second Lien Indenture, the New Revolver Facility Credit

Agreement and the Stockholders Agreement) have been negotiated in good faith, at arm's length,

and are in the best interests of the Debtors and the Reorganized Debtors and shall, upon

completion of documentation and execution be valid, binding, and enforceable documents and

agreements not in conflict with any federal or state law.

**Y.        Plan Conditions to Consummation**

68.        Each of the conditions to the Effective Date, as set forth in Section 9 of the Plan, is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

**Z.        Retention of Jurisdiction**

69.        The Court properly may retain jurisdiction over the matters set forth in Section 11 and other applicable provisions of the Plan.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**(i)        Confirmation of Plan and Related Matters**

1.        <u>Approval of Disclosure Statement</u>.  Pursuant to Bankruptcy Rule 3017(b), the Disclosure Statement is approved under Bankruptcy Code sections 1125(a) and 1125(g).

2.        <u>Solicitation</u>.  The Solicitation and Election Procedures, including the procedures for transmittal of Solicitation Packages, the forms of Ballots, and the Voting Deadline, are approved under Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Scheduling Order, the Prepack Guidelines, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations applicable to such solicitation.  The solicitation materials are approved under Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Scheduling Order, the Prepack Guidelines, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations.

3.        <u>Confirmation</u>.  The Plan, in the form attached hereto as <u>Exhibit A</u>, including all provisions thereof, all Exhibits attached thereto, the Plan Financing Supplement and the Plan Supplement (each as may be amended by the Confirmation Order or in accordance with

31

the Plan), is approved and confirmed under Bankruptcy Code section 1129.  The terms of the

Plan, the Plan Financing Supplement, the Plan Supplement and exhibits thereto are incorporated

by reference into and are an integral part of this Confirmation Order.  All acceptances and

rejections previously cast for or against the Plan are hereby deemed to constitute acceptances or

rejections of the Plan in the form attached to this Confirmation Order.  The documents contained

in the Plan Financing Supplement and Plan Supplement, and any amendments, modifications,

and supplements thereto, and all documents and agreements related thereto (including all

exhibits and attachments thereto and documents referred to in such papers), and the execution,

delivery and performance thereof by the Debtors and the Reorganized Debtors, are authorized

and approved as finalized, executed and delivered.  Without further order or authorizations of the

Court, the Debtors, the Reorganized Debtors and their successors are authorized and empowered

to make all modifications to all documents included as part of the Plan Financing Supplement

and/or Plan Supplement that are consistent with the Plan.

        4.        <u>Confirmation Order Binding on All Parties</u>. Subject to the provisions of

the Plan and Bankruptcy Rule 3020(e), in accordance with Bankruptcy Code section 1141(a) and

notwithstanding any otherwise applicable law, upon the occurrence of the Effective Date, the

terms of the Plan and this Confirmation Order shall be binding upon, and inure to the benefit of:

(a) the Debtors; (b) the Reorganized Debtors; (c) any and all Holders of Claims or Interests

(irrespective of whether such Claims or Interests are impaired under the Plan or whether the

Holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected

the Plan); (d) any other person giving, acquiring or receiving property under the Plan; (e) any

and all non-Debtor parties to executory contracts or unexpired leases with any of the Debtors;

and (f) the respective heirs, executors, administrators, trustees, affiliates, officers, directors,

agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any

of the foregoing.  On the Effective Date, all settlements, compromises, releases, waivers,

discharges, exculpations and injunctions set forth in the Plan shall be effective and binding on all

Persons who may have had standing to assert any settled, released, discharged, exculpated or

enjoined causes of action, and no other Person or entity shall possess such standing to assert such

causes of action after the Effective Date.

5.      Notice.  Notice of the Combined Hearing was proper and adequate.

6.      Objections.  All objections and all reservations of rights that have not been

withdrawn, waived or settled, pertaining to the confirmation of the Plan are overruled on the

merits.

7.      Effectiveness of All Actions.  All actions contemplated by the Plan are

hereby authorized and approved in all respects (subject to the provisions of the Plan).  The

approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive

and are not intended to limit the authority of any Debtor or Reorganized Debtor or any officer or

director thereof to take any and all actions necessary or appropriate to implement, effectuate and

consummate any and all documents or transactions contemplated by the Plan or this

Confirmation Order.  Pursuant to this Confirmation Order, Delaware General Corporate Law

section 303, and other applicable law, the Debtors and the Reorganized Debtors are authorized

and empowered, without action of their respective stockholders or members or boards of

directors or managers (but subject to consent rights, if any, set forth in the Plan) to take any and

all such actions as any of their executive officers may determine are necessary or appropriate to

implement, effectuate and consummate any and all documents or transactions contemplated by

the Plan or this Confirmation Order.

8.        Vesting of Assets and Operation as of the Effective Date.  Except as

otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the

Estates shall vest in each of the Debtors and, ultimately, in the Reorganized Debtors, free and

clear of all Claims, liens and interests (except for the liens and security interests granted to

secure the New Financing).  As of the Effective Date, each of the Reorganized Debtors may

operate its business and use, acquire, and dispose of property and settle and compromise Claims

without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or

Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this

Confirmation Order.

9.        Mergers.  On the Effective Date, (i) AMO will merge into Reorganized

AMI and (ii) the Escrow Issuer and New LLC will merge into Reorganized AMI.

10.        Organizational Documents.  On or immediately prior to the Effective

Date, the Reorganized Debtors shall, and are hereby authorized to, (i) file their respective

Restated Certificates of Incorporation, forms of which are attached to the Plan Supplement as

Exhibit K, with the Delaware Secretary of State, (ii) adopt their respective Restated Bylaws,

forms of which are attached to the Plan Supplement as Exhibit J and (iii) adopt the Stockholders

Agreement, which is attached to the Plan Supplement as Exhibit I.

11.        Reorganized Debtors' Boards of Directors and Officers.  The boards of

directors and officers of each of the Reorganized Debtors have been identified in the Plan

Supplement, and the Reorganized Debtors shall be authorized to employ such officers without

further order of the Court or other further action by any other person or entity.

12.        Cancellation of Interests.  On the Effective Date, all notes, instruments,

certificates, and other documents evidencing Interests shall be cancelled, terminated and

34

extinguished and the obligations of the Debtors thereunder or in any way related thereto shall be discharged including, but not limited to, (a) the Interests in AMI and (b) any options or warrants to purchase Interests of AMI, or obligating such Debtors to issue, transfer or sell Interests or any other capital stock of such Debtors.

13.     <u>Cancellation of the Notes, the Indentures, and the 2009 Credit Agreement</u>. On the Effective Date, except as otherwise specifically provided for in the Plan, all of the agreements and other documents evidencing the Claims or rights of any Holder of a Claim against the Debtors, including all credit agreements, indentures and notes evidencing such Claims. Notwithstanding the foregoing and anything contained in the Plan, the 2009 Credit Agreement and the Indentures shall continue in effect to the extent necessary to (i) allow the Reorganized Debtors, the Administrative Agent and the Indenture Trustees to make distributions pursuant to the Plan on account of the Claims under the 2009 Credit Agreement and Indentures, as applicable, (ii) permit the applicable Indenture Trustee to assert its charging lien, (iii) permit the applicable Indenture Trustee to perform such other functions with respect thereto, (iv) permit the applicable Indenture Trustee or Administrative Agent to maintain and enforce any right to indemnification, contribution or other Claim it may have under the Indentures or 2009 Credit Agreement, as applicable, (v) permit the applicable Indenture Trustee and Administrative Agent to exercise its rights and obligations relating to the interests of the applicable noteholders or lenders and their relationship with the noteholders or lenders, and (vi) appear in these Chapter 11 Cases, *provided, however*, that the Indenture Trustees and the Administrative Agent will not be reimbursed by the Debtors for fees and expenses for post-Effective Date services in connection with (v) and (vi) above.

14.    <u>Surrender of Existing Securities</u>.  As a condition precedent to receiving

any distribution on account of any Notes Claims, each record Holder of any Notes Claims shall

be deemed to have surrendered such notes or other documentation underlying such notes and all

such surrendered notes and other documentation shall be deemed to be cancelled in accordance

with Section 5.7 of the Plan.  If the record Holder of a Subordinated Note, PIK Note or 2011

Note is The Depository Trust Company ("***DTC***") or its nominee or such other securities

depository or custodian thereof or is held in book entry or electronic form pursuant to a global

security held by DTC, then the beneficial Holder of such a Note Claim shall be deemed to have

surrendered such Holder's security, note, debenture or other evidence of indebtedness upon

surrender of such global security by DTC or such other securities depository or custodian

thereof.

15.    <u>Issuance of New Common Stock</u>.  Issuance of the New Common Stock in

accordance with the Plan is approved.  Each of the Debtors and the Reorganized Debtors are

authorized and empowered, without further approval of this Court or any other party, to take

such actions and to perform such acts as may be necessary, desirable or appropriate to implement

the issuance of the New Common Stock in accordance with the Plan and to execute and deliver

all agreements, documents, securities, instruments, and certificates relating thereto.  The New

Common Stock to be issued is hereby deemed issued as of the Effective Date regardless of the

date on which it is actually distributed.  All New Common Stock issued by the Reorganized

Debtors pursuant to the provisions of the Plan is hereby deemed to be duly authorized and

issued, fully paid and nonassessable.

16.    <u>Exemption from Registration</u>.  The (i) offer by the Debtors and/or the

Reorganized Debtors of the New Common Stock issued under the Plan in exchange for the

Subordinated Notes Claims and the 2011 Notes Claims is exempt from the registration

requirements of the Securities Act and similar state statutes pursuant to applicable securities law

and (ii) issuance by the Reorganized Debtors of the New Common Stock pursuant to the Plan in

exchange for the Subordinated Notes Claims and the 2011 Notes Claims is exempt from the

registration requirements of the Securities Act and similar state statutes pursuant to Bankruptcy

Code section 1145.  In addition, pursuant to section 3(a)(9) of the Securities Act, section 4(2) of

the Securities Act, and Bankruptcy Code section 1145, the distribution of the New Second Lien

Notes pursuant to the Plan is exempt from registration requirements of the Securities Act and

similar state statutes including any state or local laws requiring registration for offer or sale of a

security and is exempt from any other requirements of federal, state or local securities laws.

      17.    <u>New Financing</u>.  On the Effective Date, (i) the Escrow Issuer and New

LLC are authorized to merge into Reorganized AMI immediately following the merger of AMO

into Reorganized AMI, which will assume the Escrow Issuer's obligations under the New First

Lien Notes, the New First Lien Indenture and the related registration rights agreement, (ii) the

proceeds of the New First Lien Notes Offering (and any other amounts held in escrow) will be

released from escrow, and (iii) the Reorganized Debtors, as applicable, are authorized to (a) enter

into or assume, as applicable, and deliver the documents and agreements related to the New

Financing, including all guarantees and security documents relating thereto, and the registration

rights agreement relating to the New Second Lien Notes, (b) execute and deliver such security

documents, control agreements, certificates, financing statements and other documentation as

required under the terms of the New Financing or as the applicable agents under the New

Financing reasonably request, and (c) deliver insurance and customary opinions (collectively, the

documents in (a)-(c), the "***New Financing Documents***"), and such documents and all other

documents, instruments and agreements to be entered into, delivered or contemplated thereunder shall become effective in accordance with their terms on the Effective Date.  Without limiting the foregoing, the Reorganized Debtors are authorized to enter into, perform and take all other actions to consummate any and all transactions contemplated by the New Financing Documents, including to pay, and shall pay, as and when due, all fees, indemnities, expenses and other amounts provided under the New Financing Documents.  The Reorganized Debtors, as applicable, may enter into such amendments and modifications as may be agreed to by and between the Reorganized Debtors, as applicable, and the applicable or requisite indenture trustees, noteholders, lenders and agents under the New Financing Documents on and after the Effective Date without further order of the Court to effectuate the transactions contemplated by the Plan and this Confirmation Order, notwithstanding anything to the contrary in the Plan.  The New Financing Documents shall constitute the legal, valid, binding and authorized obligations of the applicable Reorganized Debtors, enforceable in accordance with their terms.  On the Effective Date, all of the liens and security interests granted in accordance with the New Financing Documents are hereby deemed approved and shall be legal, valid, binding, enforceable and non-avoidable liens on and security interests in the collateral granted thereunder in accordance with the terms of the New Financing Documents and shall be deemed properly perfected as of the Effective Date.  The Debtors or the Reorganized Debtors, as applicable, are hereby authorized to make any and all filings with any state or local recording officer or otherwise, including this Confirmation Order, to evidence the release of any liens existing on the property of the Estates immediately prior to the Effective Date.  All obligations of the Reorganized Debtors arising pursuant to the New Financing Documents are in exchange for fair and reasonably equivalent value and do not constitute a preferential transfer or fraudulent

transfer or fraudulent conveyance under applicable federal or state laws and will not subject the

indenture trustees, noteholders, lenders or agents party to the New Financing Documents to any

liability by reason of the incurrence of such obligation or grant of such liens or security interests

under applicable federal or state laws, including but not limited to successor or transferee

liability.

18.    Election to Put New Second Lien Notes to Backstop Parties.  The election

form provided to Holders of Term Facility Claims and the election procedures, as described in

the Scheduling Motion, were reasonable and appropriate.  To the extent that a Holder of a Term

Facility Claim has made an election to have the Backstop Parties purchase (or elect to receive) its

New Second Lien Notes pursuant to the Plan, the Backstop Parties will purchase (or elect to

receive) such New Second Lien Notes on the Effective Date, and such Holder shall receive the

face amount of such New Second Lien Notes in Cash on the Effective Date.  The failure of a

Holder to make an election reflects an agreement that such Holder will retain its New Second

Lien Notes received pursuant to the Plan.

19.    Executory Contracts and Unexpired Leases.  On the Effective Date, all

executory contracts or unexpired leases of the Debtors, other than any executory contract or

unexpired lease that (a) was previously assumed or rejected or (b) is subject to a pending motion

to assume or reject as of the Confirmation Date, shall be deemed assumed as of the Confirmation

Date (but subject to the occurrence of the Effective Date) in accordance with, and subject to, the

provisions and requirements of Bankruptcy Code sections 365 and 1123.

20.    All executory contracts or unexpired leases assumed by the Debtors

pursuant to the foregoing (the "***Assumed Agreements***") shall remain in full force and effect for

the benefit of the Reorganized Debtors, as applicable, and be enforceable by the Reorganized

Debtors, as applicable, in accordance with their terms notwithstanding any provision in such

Assumed Agreements that purports to prohibit, restrict or condition such assumption.  The

assumption of the Assumed Agreements shall be free and clear of all liens, encumbrances,

pledges, mortgages, deeds of trust, security interests, claims, charges, options, rights of first

refusal, easements, servitudes, proxies, voting trusts or agreements, and/or transfer restrictions

under any shareholder or similar agreement or encumbrance (except for the liens and security

interests granted to secure the New Financing).  Any provision in the Assumed Agreements that

purports to declare a breach or default based in whole or in part on the above-captioned cases is

hereby deemed unenforceable, and the Assumed Agreements shall remain in full force and

effect.

        21.    <u>Employee Benefits</u>.  All employee, retirement and other agreements or

arrangements in place as of the Effective Date with the Debtors' officers, directors, or

employees, who will continue in such capacities or similar capacities after the Effective Date, or

retirement plans and welfare benefit plans for such persons, shall remain in place after the

Effective Date, and the Reorganized Debtors will continue to honor such agreements,

arrangements, programs and plans; *provided, however*, that the foregoing shall not apply to any

stock-based compensation or incentive plan existing as of the Petition Date.  Notwithstanding the

foregoing, pursuant to Bankruptcy Code section 1129(a)(13), on and after the Effective Date, all

retiree benefits (as that term is defined in Bankruptcy Code section 1114), if any, shall continue

to be paid in accordance with applicable law.

        22.    <u>Vesting of Assets in the Reorganized Debtors</u>.  Except as otherwise

provided in the Plan or any agreement, instrument or other document incorporated therein, on the

Effective Date, all property in each Estate, and all Causes of Action (except those released

pursuant to the Debtor Releases) shall vest in each of the respective Reorganized Debtors, free

and clear of all liens, Claims, charges or other encumbrances (except for the liens and security

interests granted to secure the New Financing).  On and after the Effective Date, except as

otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use,

acquire or dispose of property and compromise or settle any Claims, Interests or Causes of

Action without supervision or approval by the Court and free of any restrictions of the

Bankruptcy Code or Bankruptcy Rules.

      23.    <u>Incentive and Severance Plans</u>.  The terms of the Equity Incentive Plan,

the Director Severance Plan and the Emergence Incentive Plan, as set forth in the Plan

Supplement, are hereby approved, and the Debtors and Reorganized Debtors are authorized,

without further approval of this Court or any other party, to execute and deliver all agreements,

documents, instruments and certificates relating to the Equity Incentive Plan, the Director

Severance Plan and the Emergence Incentive Plan, and to perform their obligations thereunder.

      24.    <u>Effectuating Documents; Further Transactions</u>.  On and after the Effective

Date, the Reorganized Debtors and the managers, officers and members of the boards of

directors thereof are authorized to issue, execute, deliver, file or record such contracts, securities,

instruments, releases and other agreements or documents and take such actions as may be

necessary or appropriate to effectuate, implement and further evidence the terms and conditions

of the Plan (including the New Financing) and the securities issued pursuant to the Plan in the

name of and on behalf of the Reorganized Debtors, without the need for any approvals,

authorization or consents except for those expressly required pursuant to the Plan.

      25.    <u>D&O Insurance Policy</u>.  Notwithstanding anything in the Plan or in this

Confirmation Order to the contrary, as of the Effective Date, the Debtors shall assume (and

assign to the Reorganized Debtors if necessary to continue the D&O Insurance Policy in full

force) the D&O Insurance Policy pursuant to Bankruptcy Code section 365(a). Entry of this

Confirmation Order shall constitute the Court's approval of the Debtors' foregoing assumption

of the D&O Insurance Policy. Until the sixth anniversary of the Effective Date, Reorganized

AMI shall cause the individuals serving as directors of the Reorganized Debtors to be covered by

the D&O Insurance Policy (provided that Reorganized AMI may substitute therefor policies of at

least the same coverage and amounts containing terms and conditions that are not less

advantageous in any material respect than the D&O Insurance Policy); provided that in no event

shall Reorganized AMI be required to expend annually in the aggregate an amount in excess of

150.0% of the annual premiums currently paid by AMI for such insurance (the "***Insurance

Amount***"), and provided further that if Reorganized AMI is unable to maintain the D&O

Insurance Policy (or such substitute policy) as a result of the preceding proviso, Reorganized

AMI shall obtain as much comparable insurance as is available for the Insurance Amount.

26.      <u>Preservation of Rights of Action</u>.  In accordance with Bankruptcy Code

section 1123(b), and except where such Causes of Action have been expressly released

(including, for the avoidance of doubt, pursuant to the Debtor Releases provided by Section 10.7

of the Plan), the Reorganized Debtors shall retain and may enforce all rights to commence and

pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition

Date, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of

Action shall be preserved notwithstanding the occurrence of the Effective Date.  The

Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the

best interests of the Reorganized Debtors.  No Entity may rely on the absence of a specific

reference in the Plan or the Disclosure Statement to any Cause of Action against them as any

indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them.  Except with respect to Causes of Action as to which the Debtors or Reorganized Debtors have released any Person or Entity on or before the Effective Date (including pursuant to the Releases by the Debtors or otherwise), the Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a consequence of the confirmation or Consummation.

27.    _Exemption from Certain Transfer Taxes_.  The issuance, transfer or exchange of debt and equity under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any contract, lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all taxes (including, without limitation, stamp tax or similar taxes) to the fullest extent permitted by Bankruptcy Code section 1146, and the appropriate state or local governmental officials or agents shall not collect any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

28.    _Provisions Governing Distributions_.  The distribution provisions of Section 6 of the Plan are hereby approved and authorized in their entirety.  Except as otherwise

set forth in the Plan, the Reorganized Debtors shall make all distributions under the Plan.

Notwithstanding anything contained in the Plan, the Plan Financing Supplement, the Plan

Supplement or this Confirmation Order, each of the Indenture Trustees will serve as

Disbursement Agent to facilitate distributions to its respective Class of Notes Claims and the

Administrative Agent will serve as the Disbursement Agent to facilitate distributions to Holders

of Term Facility Claims and Revolver Claims.

### (ii)    Discharge of Debtors, Releases and Injunctions

29.    <u>Discharge of Debtors</u>.  Pursuant to Bankruptcy Code section 1141(d), and

except as otherwise specifically provided in the Plan or in this Confirmation Order, except to the

extent otherwise provided in the Plan, the treatment of all Claims against or Interests in the

Debtors under the Plan shall be in exchange for and in complete satisfaction, discharge and

release of all Claims against or Interests in the Debtors of any nature whatsoever, known or

unknown, including any interest accrued or expenses incurred thereon from and after the Petition

Date, or against their Estates or properties or interests in property.  Except as otherwise provided

in the Plan, upon the Effective Date, all Claims against and Interests in the Debtors shall be

satisfied, discharged and released in full exchange for the consideration provided under the Plan.

Except as otherwise provided in the Plan, all Persons shall be precluded from asserting against

the Debtors, or their respective properties or interests in property, any other Claims based upon

any act or omission, transaction or other activity of any kind or nature that occurred prior to the

Effective Date.  For the avoidance of doubt, Section 10.3 of the Plan shall not discharge any

Claims that have been alleged or could be alleged in the Anderson Litigation.

30.    <u>Releases, Limitations of Liability and Indemnification</u>.  The releases set

forth in Section 10.7 and 10.8 of the Plan, and the exculpation and limitation of liability

provisions set forth in Section 10.4 of the Plan are incorporated in this Confirmation Order as if

set forth in full herein and are hereby approved and authorized in their entirety and shall be, and

hereby are, effective and binding, subject to the respective terms thereof, on all persons and

entities who may have had standing to assert released Claims or causes of action, and no person

or entity shall possess such standing to assert such Claims or causes of action after the Effective

Date.

31.    <u>Injunctions</u>.  Except to the extent otherwise provided in the Plan, all

Persons who have held, hold or may hold Claims against or Interests in any Debtor are

permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in

any manner any action or other proceeding of any kind on any such Claim or Interest against any

Reorganized Debtor, (ii) the enforcement, attachment, collection or recovery by any manner or

means of any judgment, award, decree or order against any Reorganized Debtor with respect to

any such Claim or Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind

against any Reorganized Debtor, or against the property or interests in property of any

Reorganized Debtor, as applicable with respect to any such Claim or Interest, (iv) asserting any

right of setoff, subrogation or recoupment of any kind against any obligation due from any

Reorganized Debtor, or against the property or interests in property of any Reorganized Debtor

with respect to any such Claim or Interest, and (v) pursuing any Claim released pursuant to

Sections 10.7 or 10.8 of the Plan.  For the avoidance of doubt, Section 10.5(a) of the Plan shall

not enjoin any Claims that have been alleged or could have been alleged in the Anderson

Litigation.  Unless otherwise provided, all injunctions or stays arising under or entered during the

Chapter 11 Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on

the Confirmation Date, shall remain in full force and effect until the later of the Effective Date

and the date indicated in the order providing for such injunction or stay.

45

32.     <u>Exculpations</u>.  Except as otherwise specifically provided in the Plan or Plan Supplement, no Released Party shall have or incur any liability for any claim, cause of action, or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, Consummation, or administration of the Plan, or property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 Cases, the Plan, or any contract, instrument, indenture, or other agreement or document related thereto or delivered thereunder, *provided, however,* that the foregoing shall be subject to a limited carve-out solely for gross negligence, willful misconduct criminal acts and fraud.  Notwithstanding anything herein to the contrary, nothing in the Plan shall (1) exculpate any Person or Entity from any liability resulting from any act or omission constituting fraud, willful misconduct, gross negligence, criminal conduct, malpractice, misuse of confidential information that causes damages or ultra vires act as determined by a Final Order or (2) limit the liability of the professionals of the Released Parties to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).

### (iii)     **Plan Modifications**

33.     <u>Plan Modifications</u>.  The modifications to the Plan were made in a manner consistent with Section 12.6 of the Plan and did not materially or adversely modify the treatment of any Claims or Interests.  The Plan, as modified, satisfies the requirements of Bankruptcy Code sections 1122 and 1123.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under Bankruptcy Code section 1125 or resolicitation of votes under Bankruptcy Code section 1126, nor do they require that Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Such modifications are approved pursuant to section 1127(a).

46

**(iv)     Notice and Other Provisions**

34.     <u>Notice of Confirmation Order</u>.  On or before the fifth (5th) day following

the occurrence of the Effective Date, the Debtors shall serve notice of entry of this Confirmation

Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on: (a) the U.S. Trustee;

(b) the United States Attorney for the Southern District of New York; (c) the Securities and

Exchange Commission; (d) the Internal Revenue Service; (e) the parties listed in the

consolidated list of fifty (50) largest unsecured creditors filed by the Debtors in these bankruptcy

cases; (f) counsel to the Administrative Agent; (g) counsel to the Committee; and (h) other

parties in interest, by causing a notice of this Confirmation Order in substantially the form of the

notice annexed hereto as <u>Exhibit B</u> (the "***Notice of Confirmation***"), which form is hereby

approved, to be delivered to such parties by first class mail, postage prepaid.  The Notice of

Confirmation shall also be published in The New York Times (National Edition), USA Today

(National Edition) and the Miami Herald and any other publications the Debtors deem necessary

in their sole discretion.

35.     Notice need not be given or served under the Bankruptcy Code, the

Bankruptcy Rules, or this Confirmation Order to any Person to whom the Debtors mailed a

notice of the Combined Hearing, but received such notice returned marked "undeliverable as

addressed," "moved - left no forwarding address," "forwarding order expired," or similar reason,

unless the Debtors have been informed in writing on or before the Effective Date by such Person

of that Person's new address.

36.     Mailing and publication of the Notice of Confirmation in the time and

manner set forth in the preceding paragraphs shall be good and sufficient notice under the

particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and

3020(c), and no other or further notice is necessary.  The Notice of Confirmation shall have the

effect of an order of the Bankruptcy Court, shall constitute sufficient notice of the entry of the

Confirmation Order to any filing and recording officers, and shall be a recordable instrument

notwithstanding any contrary provision of applicable non-bankruptcy law.

37.    Professional Compensation.  Except as otherwise expressly permitted in

the Plan or other orders of the Court, all final requests for professional compensation and

reimbursement Claims shall be filed no later than 45 days after the Effective Date.  After notice

and a hearing in accordance with the procedures established by the Bankruptcy Code and prior

Court orders, the Allowed amounts of such professional compensation and reimbursement

Claims shall be determined by the Court.  Except as otherwise specifically provided in the Plan,

from and after the Effective Date, each Reorganized Debtor shall, in the ordinary course of

business and without any further notice to or action, order or approval of the Court, pay in Cash

the reasonable legal, professional or other fees and expenses incurred by that Reorganized

Debtor after the Effective Date pursuant to the Plan.  Upon the Effective Date, any requirement

that Professionals comply with Bankruptcy Code sections 327 through 331 and 1103 in seeking

retention or compensation for services rendered after such date shall terminate, and each

Reorganized Debtor may employ and pay any professional in the ordinary course of business

without any further notice to or action, order or approval of the Court.

38.    The Debtors or Reorganized Debtors shall promptly pay in full, in Cash

reasonable, documented and necessary fees for services rendered and out-of-pocket expenses

incurred by the Administrative Agent, the Indenture Trustees, and the Committee (and their

agents, attorneys and professionals) without the need of such parties to file fee applications with

the Court; provided that each party and/or its counsel provide the Debtors (or the Reorganized

Debtors, as applicable) with the invoices (or such other documentation as the Debtors (or the

Reorganized Debtors, as applicable) may reasonably request) for which it seeks payment. If the

Debtors (or the Reorganized Debtors, as applicable) have no objection to such fees, such fees

shall be paid within ten business days of the request for payment. To the extent that the Debtors

(or the Reorganized Debtors, as applicable) object to such fees, the Debtors (or the Reorganized

Debtors, as applicable) shall not be required to pay any disputed portion of such fees until a

resolution of such objection is agreed to by the Debtors (or the Reorganized Debtors, as

applicable) and such party and/or their counsel or a further order of the Court upon a motion by

such party brought in accordance with the terms of the Plan and this Confirmation Order;

*provided, however*, nothing in this Paragraph 38 shall modify, alter or amend the provisions of

the Plan relating to the payment by the Debtors (or the Reorganized Debtors, as applicable) of

any fees and expenses requested by the Indenture Trustees in accordance with Section 12.2 of the

Plan.

        39.    <u>Release of Liens</u>. Except as otherwise provided in the Plan or in any

contract, instrument, release or other agreement or document created pursuant to the Plan, on the

Effective Date and concurrently with the applicable distributions made pursuant to the Plan and,

in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is

Allowed as of the Effective Date, all mortgages, deeds of trust, liens, pledges or other security

interests against any property of the Estates shall be fully released and discharged, and all of the

right, title and interest of any Holder of such mortgages, deeds of trust, liens, pledges or other

security interests shall revert to the Reorganized Debtors and their successors and assigns.

        40.    <u>Failure to Consummate Plan and Substantial Consummation</u>. If the

Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan

(including the fixing or limiting to an amount certain any Claim or Class of Claims), the

assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any

document or agreement executed pursuant to the Plan, shall be null and void.  In such event,

nothing contained in the Plan or this Confirmation Order, and no acts taken in preparation for

consummation of the Plan, shall, or shall be deemed to, (a) constitute a waiver or release of any

Claims by or against or Interests in the Debtors or any other Person, (b) prejudice in any manner

the rights of the Debtors or any Person in any further proceedings involving the Debtors,

(c) constitute an admission of any sort by the Debtors or any other Person, or (d) be construed as

a finding of fact or conclusion of law with respect thereto.

    41. <u>References to Plan Provisions</u>.  The failure to include or specifically

reference any particular provision of the Plan in this Confirmation Order shall not diminish or

impair the effectiveness of such provision, it being the intent of the Court that the Plan be

confirmed in its entirety.

    42. <u>Exhibits</u>.  Each reference to a document, agreement or summary

description that is in the form attached as an exhibit to the Plan in this Confirmation Order, or in

the Plan, the Plan Financing Supplement, or the Plan Supplement shall be deemed to be a

reference to such document, agreement or summary description in substantially the form of the

latest version of such document, agreement or summary description filed with the Court (whether

filed as an attachment to the Plan, Plan Financing Supplement, Plan Supplement or filed

separately).

    43. <u>Plan Provisions Mutually Dependent</u>.  The provisions of the Plan are

hereby deemed nonseverable and mutually dependent.

    44. <u>Confirmation Order Provisions Mutually Dependent</u>.  The provisions of

this Confirmation Order are hereby deemed nonseverable and mutually dependent.

45.    <u>Confirmation Order Supersedes</u>.  It is hereby ordered that this

Confirmation Order shall supersede any orders of this Court issued prior to the Confirmation

Date that may be inconsistent with this Confirmation Order.

46.    <u>Conflicts Between Confirmation Order and Plan</u>.  The provisions of the

Plan and of this Confirmation Order shall be construed in a manner consistent with each other so

as to effect the purposes of each; *provided, however*, that if there is determined to be any

inconsistency between any Plan provision and any provision of this Confirmation Order that

cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this

Confirmation Order shall govern and any such provision of this Confirmation Order shall be

deemed a modification of the Plan and shall control and take precedence.

47.    <u>Retention of Jurisdiction</u>.  Pursuant to Bankruptcy Code sections 105(a)

and 1142, and notwithstanding the entry of this Confirmation Order or the occurrence of the

Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain

exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the

Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in

Section 11 of the Plan.

48.    <u>Final Order</u>.  This Confirmation Order is a Final Order and the period in

which an appeal must be filed shall commence upon the entry hereof.

49.    <u>Immediate Effectiveness</u>.  Notwithstanding Bankruptcy Rules 3020(e),

6004(h), 7062, 8001, 8002 or otherwise, immediately upon the entry of this Confirmation Order,

this Confirmation Order and, immediately upon the occurrence of the Effective Date, the terms

of the Plan, the Plan Financing Supplement, and the Plan Supplement, shall be, and hereby are,

immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized

Debtors, any and all Holders of Claims or Interests (irrespective of whether such Claims or

Interests are impaired under the Plan or whether the Holders of such Claims or Interests

accepted, were deemed to have accepted, rejected or were deemed to have rejected the Plan), any

trustees or examiners appointed in the Chapter 11 Cases, all persons and entities that are party to

or subject to the settlements, compromises, releases, discharges, injunctions, stays and

exculpations described in the Plan or herein, each person or entity acquiring property under the

Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the

Debtors and the respective heirs, executors, administrators, successors or assigns, affiliates,

officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, of any of

the foregoing.  The Debtors are authorized to consummate the Plan at any time after the entry of

the Confirmation Order subject to satisfaction or waiver of the conditions precedent to

consummation set forth in Section 9 of the Plan.

Dated:  New York, New York
_____, 2010

_____
**UNITED STATES BANKRUPTCY JUDGE**

## EXHIBIT A

**Debtors' Amended Joint Prepackaged Plan
of Reorganization Under Chapter 11 of the Bankruptcy Code**

**<u>EXHIBIT B</u>**

**Proposed Notice of Entry of Confirmation Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| AMERICAN MEDIA, INC., *et al.*,[1] | ) Case No. 10-16140 (MG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## NOTICE OF ENTRY OF ORDER CONFIRMING DEBTORS' AMENDED JOINT PREPACKAGED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**PLEASE TAKE NOTICE THAT,** on [_____], 2010, the United States Bankruptcy Court for the Southern District of New York (the "***Court***") entered the *Findings of Fact, Conclusions of Law and Order (I) Approving (A) the Debtors' Disclosure Statement Pursuant to 11 U.S.C. §§ 1125 and 1126(b), (B) Solicitation of Votes and Solicitation and Election Procedures, and (C) Forms of Ballots, and (II) Confirming the Debtors' Amended Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. [XX]] (the "***Confirmation Order***"). Among other things, the Confirmation Order confirmed the *Debtors' Amended Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 115] (the "***Plan***"),[2] thereby authorizing American Media, Inc., and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "***Debtors***") to implement the Plan in accordance with its terms.

**PLEASE TAKE FURTHER NOTICE THAT** in conjunction with the Confirmation Order, the Court granted the Debtors a waiver under rule 3020(e) of the Federal Rules of Bankruptcy Procedure of the 14-day stay period between the date of entry of the Confirmation Order and the Effective Date of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan and its provisions are binding on the Debtors, the Reorganized Debtors, any holder of a Claim or Interest and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder or assign voted to accept the Plan.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  American Media, Inc. (3383); American Media Operations, Inc. (4424); American Media Consumer Entertainment, Inc. (3852); American Media Consumer Magazine Group, Inc. (3863); American Media Distribution & Marketing Group, Inc. (3860); American Media Mini Mags, Inc. (3854); American Media Newspaper Group, Inc. (3864); American Media Property Group, Inc. (4153); Country Music Media Group, Inc. (2019); Distribution Services, Inc. (1185); Globe Communications Corp. (2593); Globe Editorial, Inc. (3859); Mira! Editorial, Inc. (3841); National Enquirer, Inc. (4097); National Examiner, Inc. (3855); Star Editorial, Inc. (9233); and Weider Publications, LLC (1848).

[2] Capitalized terms used but not otherwise defined herein shall have the same meaning ascribed to such terms in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Plan or related documents you should contact Kurtzman Carson Consultants LLC, the notice and claims agent retained by the Debtors in these chapter 11 cases (the "***Notice and Claims Agent***"), by (a) calling the Debtors' restructuring hotline at (877) 660-6698, (b) visiting the Debtors' restructuring website at:  www.kccllc.net/AMI, and/or (c) writing the Debtors at American Media c/o Kurtzman Carson Consultants LLC, 599 Lexington Avenue, 39th Floor, New York, New York, 10022.  You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at https://ecf.nysb.uscourts.gov.

New York, New York
Dated: December [20], 2010

*/s/ DRAFT*
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002
Ira S. Dizengoff
Arik Preis
Meredith A. Lahaie

*Counsel to the Debtors and Debtors in Possession*

2